LEKSI, INC., Plaintiff,

v.

FEDERAL INSURANCE COMPANY, St. Paul Fire & Marine Insurance Company, the Atlantic Mutual Insurance Company, and Hartford Accident & Indemnity Company, Defendants.

Civ. A. No. 88–4123(SSB).

United States District Court,
D. New Jersey.

May 29, 1990.

See also 129 F.R.D. 99.

Montgomery, McCracken, Walker & Rhoads by Mary F. Platt, Cherry Hill, N.J., for plaintiff.

Clark, Ladner, Fortenbaugh & Young by James B. Burns, Haddonfield, N.J., for defendant Federal Ins. Co.

Gallagher, Wheeler, Reilly & Lachat by Richard T. Barth, Woodbury, N.J., and Adams, Duque & Hazelton by Mitchell Lathrop and Kathleen Kenny, New York City, for defendant St. Paul Fire & Marine Ins. Co.

Morgan, Melhuish, Monaghan, Arvidson, Arbutyn & Lisowski by Kevin E. Wolff, Livingston, N.J., for defendant Atlantic Mut. Ins. Co.

Slimm, Dash & Goldberg by Bruce E. Barrett, Westmont, N.J., for defendant Hartford Acc. & Indem. Co.

## OPINION

BROTMAN, Senior District Judge.

Presently before the court is plaintiff Leksi, Inc.'s motion for summary judgment as to the law to be applied to comprehensive general liability clauses (hereinafter "CGL" clauses) contained in policies issued by defendants. New Jersey law is more liberal in finding coverage than is the law of Pennsylvania, the place of the contract.[1] Consequently, Leksi, the insured, seeks to apply the law of New Jersey.

## I. FACTS AND PROCEDURE

Leksi Inc., formerly known as Sartomer Resins, Inc., and Sartomer Industries, Inc.,

---

1. As Judge Fisher explained:

In Pennsylvania the [pollution exclusion] clause has been construed to exclude coverage for pollution unless it results from a discharge which "is both sudden, meaning abrupt and lasting only a short time, and accidental, meaning unexpected." *Lower Paxon Twp. v. U.S. Fidelity & Guar. Co.,* 383 Pa.Super. 558, 557 A.2d 393, 399 (1989). In con-

trast, New Jersey courts have refused to limit recovery where the losses caused by pollution were unexpected and instantaneous. *Broadwell Realty Services inc. v. Fidelity & Cas. Co.,* 218 N.J.Super. 516, 530, 528 A.2d 76 (App.Div. 1987).

*Armotek Indus., Inc. v. Employers Ins. of Wassau,* 1989 WL 135562 (D.N.J. Nov. 6, 1989).

is a Delaware corporation which, at all relevant times, owned and operated plants in Essington and Westchester, Pennsylvania. The primary product manufactured at these plants is used in false teeth. It is alleged that byproducts in this manufacturing process were transported to various landfills in New Jersey. More specifically, Leksi is a party-defendant in the *New Jersey Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.*, Civil No. 84–152(SSB) (D.N.J.) (the GEMS landfill enforcement action) and *United States v. Rohm & Haas Co.*, 85–4386(JFG) (D.N.J.) (the Lipari enforcement action) actions. On November 20, 1989, Leksi was permitted to amend its complaint to include duty to defend and indemnification claims arising out of its status as a defendant in *AT & T v. Transtech Indus., Inc.*, (the Carlstadt enforcement action), and as a putative defendant in the Bridgeport action in which NJDEP has issued a directive.[2] Leksi seeks a declaration of coverage in these cases.

The defendants are Federal Insurance Company, St. Paul Fire and Marine Insurance Company, Atlantic Mutual Insurance Company, and Hartford Accident and Indemnity Company. Defendants issued CGL policies that were in effect, consecutively, from September 30, 1966 through March 2, 1985. These policies were negotiated, signed, and delivered in Pennsylvania, and all premiums were paid there. These policies, however, contain no choice of law provisions. *See* Transcript of Oral Argument (April 20, 1990) at 16 (hereinafter "Transcript").

Leksi initially filed a motion for partial summary judgment on the choice of law and duty to defend issues. The parties were directed to bifurcate the briefing with the choice of law issue to be determined first, so that discovery on the duty to defend question would be properly framed within the context of whatever state's law would govern that determination.

## II. DISCUSSION

Under the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988). The choice of law rule to be applied in New Jersey in insurance coverage disputes was recently stated in *State Farm Automobile Mutual Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 417 A.2d 488 (1980). There, the New Jersey Supreme Court acknowledged the general rule that "the law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties governing the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of applicable law." *Id.* at 37, 417 A.2d at 492 (citing, *inter alia, Buzzone v. Hartford Accident & Indemnity Co.*, 23 N.J. 447, 458, 129 A.2d 561, 567 (1957)). The New Jersey Supreme Court went on to state:

> We thus hold that, in an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied *unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.*

*Id.* (emphasis added). In reaching this result, the Supreme Court of New Jersey embraced the significant interest analysis set forth in the Restatement (Second) of Conflicts §§ 6, 193 (1971).

Plaintiff argues that New Jersey's interest in the cleanup of landfills within its boundaries overrides any other state's in-

---

**2.** On the date of the entry of this opinion, United States Magistrate Joel B. Rosen denied defendants' motion to amend their counterclaims to include counterclaims encompassing three Pennsylvania sites involving Leksi.

terests. Plaintiff relies in part on *Sandvik, Inc. v. Continental Ins. Co.*, 724 F.Supp. 303 (D.N.J.1989), in which Judge Lechner transferred an insurance coverage dispute to the Eastern District of Pennsylvania because of Pennsylvania's dominant interest in determining the coverage issue, as the toxic wastes were located there. *Sandvik* involved only a transfer under 28 U.S.C. § 1404(a), and not an actual determination that the law of the site of the landfill applied. Plaintiff further argues that it is no longer possible to obtain uniform interpretation of a single contract because of *Klaxon* and *State Farm,* and its equivalent, in other states. *See* Transcript at 6.

Defendant insurance companies argue that the parties are in Pennsylvania for the most part: the Leksi plants were in Pennsylvania, the insurance contract was signed in Pennsylvania, and the premiums were paid there. Although New Jersey clearly has an overriding interest in the *cleanup* of the landfills located within the state, defendants characterize this litigation as a contract dispute that will determine who pays for the cleanup, not whether there will be such a cleanup. Defendants also rely on the following language of Judge Davis in *Gilbert Spruance Co. v. Pennsylvania Manufacturers' Association Ins. Co.*, Civil No. L–8840–88 (Camden County, Law Div. June 26, 1989):

> Pennsylvania is the appropriate forum, and the law of the Commonwealth of Pennsylvania must be followed. And I state that for the following reasons: One, the contracts between PMA and Gilbert Spruance Company were negotiated in the Commonwealth of Pennsylvania. Not only were they negotiated in Pennsylvania, they were executed in Pennsylvania. In addition, the parties are in Pennsylvania. And as far as performance of the terms of those contracts, the performance is in the Commonwealth of Pennsylvania, such as billing for premiums and the payments thereof.
>
> Of course, that raises the question, why should ... anyone think that New Jersey should be the forum, a choice of law forum? Well, the only reason that has been put before the court is that

there's a landfill problem[ ] in New Jersey, and one piece of the activity of the insured had something to do allegedly with some property in New Jersey, keeping in mind that no one has an interest in New Jersey between the contracted parties.... I think that [it] would be an absolute mistake on the part of any tribunal to utilize the nature of the tort as one of the factors to throw into the balance to determine what law should apply in a particular case.... [T]here would be no consistency, which is totally repugnant to the nature of the bargaining process.

Exhibit O to Defendants' Joint Memorandum of Law.

Resolution of this issue turns on how it is characterized; it can be viewed either as a dispute between private parties over the interpretation of a private contract, or as a dispute over insurance coverage in relation to environmental enforcement actions. The facts of this case are somewhat unique in that the plant which allegedly generated the toxic waste is not located in the forum state. *Cf. Sharon Steel v. Aetna Casualty and Surety Co.*, Civil No. 87–2306 (Utah 3d Dist. July 20, 1988) (applying law of Utah, although New York was the place of contract, because the property from which the pollution emanated was in Utah); *Witco Corp. v. Travelers Indemnity Co.*, 1987 WL 65060, 1987 U.S.Dist. LEXIS 14295 (D.N.J.1987) (applying New Jersey law rather than law of the place of contracting because quality of New Jersey's interest in environment superseded New York's interest in determining contractual issue, where the toxic wastes allegedly came from insured's New Jersey plant). Although each case presented to the court by the parties is similar to the situation pending before the court, none is identical.

The Restatement (Second) of Conflict of Laws § 6(2) sets forth the following principles for determining what law applies in the absence of a statutory directive:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The Restatement further states that the following contacts should be taken into account:

(a) the place of contracting,

(b) the place of negotiating the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188. Applying these principles and considering the quality of the contacts with Pennsylvania and New Jersey, the court concludes that New Jersey law should apply.

### A. *The Needs of Interstate Commerce:*

Comment d to Section 6 of the Restatement indicates that "[c]hoice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws § 6 Comment d at p. 13. If a manufacturer from a neighboring state were free to place toxic waste in the host state without fear of subjecting itself to liability under the laws of the host state, it is likely that interstate transportation of hazardous wastes would produce litigation and conflict among states. A host state might prefer to close all of its landfills rather than face the risk of paying to clean up hazardous wastes deposited on its lands by foreign corporations. Common sense indicates that a state will be less willing to allow toxic wastes to be placed on its land unless it can be assured that its law will be applied in determining the respective liabilities of the parties for cleanup costs. The insurance coverage issues necessarily correspond to the liability issues. *See Sandvik*, 724 F.Supp. at 311 ("the allocation of clean-up costs is fundamental to any state's environmental policy"). Thus, the policy in favor of facilitating commerce among the states supports applying the law of the host state. In this case, of course, the host state is New Jersey.

### B. *Relevant Policies of the Forum:*

Several statutes evince New Jersey's overriding interest in seeing to the cleanup of toxic wastes located within its boundaries. *See* The New Jersey Spill Compensation and Control Act, N.J.Stat.Ann. § 58:10–23.11 *et seq.;* The Solid Waste Management Act, N.J.Stat.Ann. § 13:1E–1 *et seq.;* The Sanitary Landfill Facility Closure and Contingency Fund Act, N.J.Stat. Ann. § 13:1E–100 *et seq.;* The Water Pollution Control Act, N.J.Stat.Ann. § 23:5–28 *et seq.* In passing the Solid Waste Management Act, the New Jersey legislature expressly found that "the collection, disposal and utilization of solid waste is a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest; [and] that the health, safety and welfare of the people of this State require efficient and reasonable solid waste collection and disposal service or efficient utilization of such waste...." N.J.Stat.Ann. § 13:1E–2(a). *Accord* N.J.Stat.Ann. § 58:10–23.11a (the "Legislature intends by the passage of this act to exercise the powers of this State to control the transfer and storage of hazardous substances and to provide liability for damages sustained within this State as a result of any discharge of said substances, by requiring the prompt containment and removal of such pollution and substances ..."). In furtherance of insuring the cleanup of toxic wastes deposited in New Jersey, the New Jersey Department of Environmental Protection is authorized to order the correction of violations, and any person who does not comply with such orders is subject to civil

penalties. N.J.Stat.Ann. § 13:1E–10; *id.* § 13:1E–9(c).

The New Jersey statutory policy in favor of the cleanup of toxic wastes is clearly implicated here. The four landfills for which Leksi seeks a declaration of coverage are the Lipari Landfill in Mantua Township, the Gloucester Environmental Management Services Landfill (hereinafter the "GEMS Landfill") in Gloucester Township, the Bridgeport Rental Oil Services Site (hereinafter the "Bridgeport Site") in Logan Township, and the Carlstadt Site in Bergen County. These sites are respectively ranked first, twelfth, thirty-fifth, and seventy-fifth on the National Priorities List. 40 C.F.R. Part 300 Appendix B (as of March, 1989). The cost of the cleanup of the Lipari Landfill is estimated to be $65,-270,000. *United States v. Rohm & Haas Co.*, 721 F.Supp. 666, 670–71 (D.N.J.1989). The costs associated with the first phase of the cleanup of the GEMS Landfill is approximately $32,500,000. *New Jersey Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.*, 719 F.Supp. 325, 331 (D.N.J. 1989). The current estimate for the cleanup cost for the Bridgeport Site is in excess of $95,000,000. *See* Exhibit 11 to Plaintiff's Statement of Facts (Appendix C) (In Re The Bridgeport Rental Oil Services Waste Disposal Site, Logan Township).

A corollary to New Jersey's compelling interest in the remediation of hazardous waste sites is its interest in the availability of insurance coverage for the costs associated with the cleanup of those sites. *See Continental Ins. Cos. v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 842 F.2d 977, 985 (8th Cir.) (en banc) ("the broad issue of the availability of liability insurance coverage under standard-form CGL policies for the costs of cleaning up hazardous waste sites is a question of substantial importance not only to liability insurers and their insureds, but to the public as well"), *cert. denied sub nomine Missouri v. Continental Ins. Co.*, — U.S. ——, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). If there are no funds to satisfy the costs incurred in the cleanup of hazardous waste sites, the entire statutory framework would, in some cases, become a right without a remedy. Thus, N.J.Stat.Ann. § 58:10–23.11s provides:

> Any claims for costs of cleanup, civil penalties or damages by the State, and any claim for damages by an injured person, may be brought directly against the bond, the insurer, or any other person providing evidence of financial responsibility.

In short, it is difficult to imagine any interest that New Jersey could have that would be more compelling, or, in the language of *State Farm*, more "dominant and significant," than its interest in determining the availability of funds for the cleanup of hazardous substances located within its boundaries. *See Verlan, Ltd. v. John L. Armitage & Co.*, 1989 WL 8590 (N.D.Ill. 1989) (finding that Illinois had strongest interest in determining insurance coverage because site of cleanup, plant that allegedly generated waste, and regulatory agency instrumental in investigation were all located in Illinois).

### C. *Relative Weight of Policies of Other Interested States:*

Pennsylvania has several contacts relevant to the choice of law determination. Virtually all of the contracting occurred in Pennsylvania. The policies were negotiated through agents in Pennsylvania, and were signed and delivered there. Although Leksi is a Delaware corporation, the facilities which produced the wastes are located in Pennsylvania. *See Triangle Publications, Inc. v. Liberty Mutual Ins. Co.*, 703 F.Supp. 367, 369–70 (E.D.Pa.1989). As the place of the negotiating and contracting, Pennsylvania "has an obvious interest in the negotiations and in the agreement reached." Restatement (Second) § 188 Comment e, at p. 580. *See Molyneaux v. Molyneaux*, 230 N.J.Super. 169, 181, 553 A.2d 49, 55 (App.Div.1989).

Pennsylvania's interest, however, pales in comparison to that of New Jersey. The parties themselves made no express choice of law; thus, no state has an interest in vindicating the parties' choice of law. Defendants are national insurance companies.

Although the premiums may have been paid in Pennsylvania, one can safely assume that the insurers would have accepted the premiums if tendered in some other state. *See* Transcript at 10. Although the insurance policies were negotiated through local agents, there is no reason to believe that the defendant insurance companies would have declined to enter into the agreements if an agent from outside of Pennsylvania had arranged to have Leksi purchase insurance. Finally, it is noteworthy that there are as many or more landfills in New Jersey within close proximity to the Leksi plants than there are in Pennsylvania. *See* Transcript at 11. While certainly Pennsylvania has an interest in applying its law, that interest should not be overestimated in light of New Jersey's contacts.

### D. *Protection of Justified Expectations:*

The parties made no provision for the choice of law. It is not so unforeseeable that New Jersey, an adjoining state, would be likely to receive toxic wastes from the Pennsylvania plants operated by Leksi. This is not a case where it is completely unforeseeable to the insurer that a certain state's law would be applied. New Jersey is immediately adjacent to Pennsylvania; it was foreseeable that Leksi's wastes would be deposited across the Delaware River in New Jersey. It was therefore foreseeable that the law of New Jersey would control the insurance coverage issue.

### E. *Policies Underlying Particular Area of Law:*

The Supreme Court of New Jersey recently observed that "[t]he fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the parties." *Werner Indus. Inc. v. First State Ins. Co.,* 112 N.J. 30, 35, 548 A.2d 188, 190 (1988) (citation omitted). In this regard, the Restatement focuses on the location of the insured risk, and distinguishes between those risks which are immovable, such as a house, and those which are not. Toxic waste is a risk that does not fit neatly into the category of immovable risks; wastes are constantly shipped from state to state, and even from country to country, in order to find a resting place. Environmental law in general recognizes that the most significant aspect of liability for toxic wastes turns not on where the wastes were manufactured, but on where they come to rest. Most environmental laws impose liability for response and remediation costs; the liability is not, for the most part, a result of the manufacturing of the product in the first place.

With these policies in mind, it would have been objectively reasonable, in the absence of a choice of law provision, to expect that New Jersey law would apply. The parties could or should have known of New Jersey's overriding interest in its environment, and the reality that in environmental torts of this nature, liability runs with the land.

### F. *Predictability and Uniformity of Result:*

The court recognizes that the result reached today could be disquieting if extended unreasonably. This case does not present such concerns. It is significant that the parties included no choice of law provision in the contract, although they were free to do so. As explained above, it was objectively foreseeable to the parties that the law of New Jersey would apply.

### G. *Ease in Determination:*

The rule adopted today provides a simple method for choosing *post facto* what state's law applies: in the absence of a choice of law provision, the state where the toxic waste comes to rest is the state whose law will apply, provided that it was reasonably foreseeable that the waste would come to rest there. With the exception of situations in which the adjoining states dispute their boundary, this rule is elegant in its simplicity and properly recognizes that the host state's interest in its environment is superior to that of the law of the place of the contract. Although this rule may not provide unerring clarity to the parties at the time of negotiating, this difficulty may be cured by the simple insertion of a choice of law provision.

## III. CONCLUSION

For the foregoing reasons, the court concludes that the law of New Jersey should apply to this insurance coverage dispute. Although the rule adopted here is admittedly novel, the court is confident that it is the rule a New Jersey "state court would rule to be its law." *Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring).

An appropriate order will be entered.

### ORDER

This matter having come before the court on plaintiff Leksi, Inc.'s motion for partial summary judgment as to the law to be applied; and

The court having considered the submissions of the parties and the arguments of counsel; and

For the reasons set forth in the court the court's opinion of this date;

IT IS on this 29th day of May, 1990 hereby

ORDERED that plaintiff's motion for partial summary judgment is GRANTED and the law of New Jersey shall be applied.

No costs.