### LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

### TRIANGLE INDUSTRIES, INC. (now Trian Holdings, Inc.) and Triangle PWC, Inc., Defendants and Third–Party Plaintiffs,

v.

### WAUSAU INSURANCE COMPANIES and Employers Insurance of Wausau, New Jersey Property–Liability Guaranty Association, on Behalf of Ideal Mutual Insurance Company, in liquidation, and Zurich–American Insurance Company, severally and in the alternative, Third–Party Defendants.

Civ. A. No. 88–0041–W(K).

United States District Court, N.D. West Virginia.

March 12, 1991.

---

James P. Whitters, III, Martha J. Koster, Lee H. Glickenhaus, Gaston & Snow, Boston, Mass., and James F. Companion, Patrick S. Casey, Schrader, Byrd, Byrum & Companion, Wheeling, W.Va., for plaintiff.

Walter E. Monaghan, Summit, N.J., pro hac vice, and John Skaggs, Charleston, W.Va., for New Jersey Property–Liability Guar. Ass'n.

J. Greg Goodykoontz, Steptoe & Johnson, Clarksburg, W.Va., for defendants.

Paul L. Gingras, Zelle & Larson, Minneapolis, Minn. and Patrick S. Cassidy, O'Brien, Cassidy & Gallagher, Wheeling, W.Va., and Anthony R. Zelle, Wm. Gerald McElroy, Jr., Zelle & Larson, Waltham, Mass., for Wausau Ins. and Employers Ins. of Wausau.

William A. Trainer, J. Michael Weber, Parkersburg, W.Va., and Robert J. Bates, Jr., Phelan, Pope & John, Ltd., Chicago, Ill., for Zurich Ins.

Stephen M. Orlofsky, Carlo Scarmella, Blank, Rome, Comisky & McCauley, Cherry Hill, N.J., for Trian (formerly Triangle Ind.) and Triangle PWC, Inc.

## MEMORANDUM OPINION AND ORDER

KIDD, District Judge.

Currently pending are the parties' cross-motions for summary judgment in this declaratory action, invoking the Court's diversity jurisdiction. Said motions, having been fully briefed, are ripe for disposition.

The defendants, Trian Holdings, Inc. (formerly Triangle Industries, Inc.), and Triangle PWC, Inc. ("Triangle"), seek a declaration that the plaintiff, Liberty Mutual Insurance Company ("Liberty"), and third-party defendants, Wausau Insurance Companies and Employers Insurance of Wausau ("Wausau")[1], New Jersey Property–Liability Guaranty Association, on behalf of Ideal Mutual Insurance Company, in liquidation ("NJPLIGA"), and Zurich–American Insurance Company ("Zurich"), owe a duty to defend and indemnify Triangle for governmental demands for clean-up of a hazardous waste facility. All of the insurers deny coverage under their respective insurance policies with Triangle.

The facts underlying this action are basically undisputed. Triangle, a New Jersey corporation, owned and operated a steel "pickling" plant in Glen Dale, West Virginia. Triangle's operations at this plant generated a waste product known as "lime stabilized waste pickle liquor sludge" ("sludge").

Between November 1977 and October 1980, the sludge was shipped for disposal to the Buckeye Reclamation Landfill, located in St. Clairsville, Ohio. Triangle engaged the services of an independent contractor to transport the sludge to the landfill site.

On October 15, 1980, the Ohio EPA conducted sampling of the sludge located at the Buckeye Landfill, and determined that the sludge was "toxic" according to its criteria. In December 1980, the Ohio EPA conducted further sampling of surface water from a stream near the Buckeye Landfill. Analysis of these water samples indicated that contaminated materials were escaping from the landfill.

On September 8, 1983, the Buckeye Landfill was listed on the National Priori-

1. By letter dated January 28, 1991, counsel for Wausau has informed the Court that it is currently negotiating a settlement with Triangle and requested that the Court defer ruling on Triangle's summary judgment motion as it pertains to Wausau. The Clerk is directed to file said letter. Accordingly, ruling herein is deferred for a period of thirty (30) days from entry of this Opinion, at which time Triangle and Wausau will submit an Order dismissing their claims as settled or Wausau will file its brief in opposition.

ty's List pursuant to § 105(8)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). Based upon tests conducted at the site, the Ohio EPA and the United States EPA ("USEPA") concluded that the Buckeye Landfill had been releasing and was continuing to release hazardous substances which posed an imminent and substantial danger to the public health, welfare, and the environment.

On December 7, 1984, Triangle was notified by the USEPA that it was being designated a "potentially responsible party" pursuant to CERCLA, in connection with the environmental contamination at the Buckeye Landfill. On October 3, 1985, Triangle, along with other potentially responsible parties, executed an administrative order, known as a consent decree, as required by Ohio EPA and USEPA, for the cleanup of the Buckeye Landfill.

NJPLIGA issued a one year comprehensive general liability insurance ("CGL") policy to Triangle, effective January 1, 1981 to January 1, 1982. Liberty issued two CGL policies covering the periods January 1, 1982 to January 1, 1983, and January 1, 1983 to January 1, 1984, as well as a "claims-made" policy that covered the period July 1, 1982 to May 15, 1984.[2] Zurich issued four CGL policies to Triangle, from January 1, 1984 to January 1, 1985, from January 1, 1985 to January 1, 1986, from January 1, 1986 to January 1, 1987, and from January 1, 1987 to April 1, 1987. Zurich also issued two claims-made Pollution Liability Insurance ("PLI") policies to Triangle which were in effect from May 15, 1984 to November 8, 1985.

By letter dated March 7, 1985, Triangle's counsel notified all of its insurance carriers of the claims asserted by the USEPA rising out of the enforcement actions at the Buckeye Landfill, requested that the carriers provide a defense, and agreed that any defense would be under a reservation of rights by the carriers. By letter dated November 19, 1986, NJPLIGA denied coverage. By letters dated October 30, 1985, January 23, 1986, February 27, 1986, May 21, 1986, July 8, 1986, August 19, 1986, August 27, 1986, and December 9, 1986, Liberty initially agreed to participate in the defense of Triangle by paying a portion of the fees of Triangle's retained counsel, believing it, as well as the other carriers, had a duty to defend Triangle pending further investigation. However, by letters dated June 1, 1987 and February 1, 1988, Liberty determined that the policies provided no coverage and, therefore, ceased its defense of Triangle. By letter dated April 1, 1985, Zurich also initially agreed to participate in the defense of Triangle under a reservation of rights. By letter dated August 28, 1985, Zurich informed Triangle that it denied coverage and would no longer participate in the defense of Triangle.

All of the insurance policies involved in this action were entered into by the parties in New Jersey. In answering a certified question by the Court, the West Virginia Supreme Court of Appeals held that New Jersey law controls the interpretation of the insurance policies in questions. *Liberty Mut. Ins. Co. v. Triangle Industries, Inc.*, 390 S.E.2d 562 (W.Va.1990). The Court will now proceed to rule on the questions of law involved herein.

Since the CGL policies contain identical language, the Court will proceed with questions of law common to all insurers. The first question is whether an "occurrence" has transpired which would precipitate coverage under the general conditions of the policies. An "occurrence" is defined as:

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

"Property damage" is defined as:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

---

**2.** Because Triangle's claims were not made within the applicable dates on Liberty's "claims-made" policy, there are no bona fide disputes concerning coverage under this policy.

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

■ The first issue to determine, therefore, is whether "property damage" occurred during the policy period. New Jersey has adopted the "continuous trigger" theory which "holds that where an injury process is not a definite, discrete event, the date of the occurrence should be the continuous period from exposure to the manifestation of damages." *Gottlieb v. Newark Ins. Co.*, 238 N.J.Super. 531, 535, 570 A.2d 443 (App.Div.1990); *Lac D'Amiante du Quebec Ltee. v. American Home Assur. Co.*, 613 F.Supp. 1549 (D.N.J.1985). The insurers argue that the manifestation of harm occurred when Ohio EPA detected the contamination at the Buckeye Landfill before January 1, 1981. On the other hand, Triangle argues that since the site has not yet been cleaned up, property damage is still occurring.

■ The Court believes that under New Jersey law the manifestation of harm occurs when the insured is damaged. *Hartford Acci. & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 98 N.J. 18, 27, 483 A.2d 402 (1984). As such, the Court finds that the manifestation of harm occurred on December 7, 1984, when Triangle was notified by the USEPA that it was being designated a "potentially responsible party" pursuant to CERCLA. Accordingly, the Court holds that the property damage at the Buckeye Landfill occurred from 1978 until December 7, 1984. Therefore, property damage occurred during all of the CGL policies' periods.

■ Since property damage occurred during the respective policy periods, the Court now must determine whether the property damage resulted from an accident which was "neither expected nor intended from the standpoint of the insured." In regard to the definition of "occurrence," the focus is on whether the *property damage* was unexpected and unintended by Triangle. The Court has no doubt that Triangle neither expected nor intended that the sludge deposited at the Buckeye Landfill would give rise to a claim by Ohio EPA and USEPA that Triangle would be responsible for cleanup costs at the Buckeye Landfill. Therefore, the Court finds that an "occurrence" has transpired giving rise to coverage under the CGL policies.

■ The next question of law is whether the pollution exclusion clause found in the CGL policies of Liberty and NJPLIGA exclude coverage herein. The pollution exclusion clause provided that the policies do not apply:

> To bodily injury property damage arising out of pollution or contamination due to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Triangle argues that the pollution exclusion clause does not apply so long as the "discharge, dispersal, release or escape" was unexpected and unintended. Lower court decisions in New Jersey do support Triangle's argument that "sudden and accidental" means "unexpected and unintended." *Lansco, Inc. v. Department of Environmental Protection*, 138 N.J.Super. 275, 350 A.2d 520 (Ch.Div.1975), *aff'd*, 145 N.J. Super. 433, 368 A.2d 363 (App.Div.1976), *certif. den.*, 73 N.J. 57, 372 A.2d 322 (1977). However, the New Jersey Supreme Court has never addressed this issue. The Court need not decide this issue because the Court finds that Triangle expected and intended that the sludge be deposited at the Buckeye Landfill.

Triangle's argument that it did not expect nor intend the property damage at the Buckeye Landfill does not relieve it from the pollution exclusion clause of the CGL policies. Unlike the definition of "occurrence," which focuses on the property damage, the pollution exclusion clause language focuses on the discharge, dispersal, release or escape of the pollutants. *See*

*Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 380 S.E.2d 686 (1989) ("The pollution. exclusion clause focuses on whether the *'discharge, dispersal or release'* of the pollutants is unexpected and unintended; the definition of occurrence focuses on whether the *property damage* is unexpected and unintended. The pollution exclusion clause therefore has the effect of eliminating coverage for damage resulting from the intentional discharge of pollutants."). To hold otherwise would eviscerate the pollution exclusion clause.

Therefore, since Triangle intentionally had the sludge disposed of at the Buckeye Landfill, the pollution exclusion clause excluded coverage under the CGL policy. There is no coverage under the CGL policies issued by Liberty and NJPLIGA.

■ Another pollution exclusion clause found in the CGL policies issued by Zurich and in Endorsement 10 of the Liberty policy provides that no coverage exists for pollution damage unless the pollution damage arises out of "products hazard" or the "completed operations hazard." Triangle's claim does not arise out of the "products hazard," since the sludge was clearly a waste product, nor out of the "completed operations hazard" since the sludge was hauled away and dumped off the premises of Triangle by an independent contractor. Therefore, there is no coverage of Triangle under the CGL issued by Zurich nor under Endorsement 10 of the CGL issued by Liberty.

■ The remaining insurance policy upon which Triangle seeks coverage is Zurich's PLI policy. Zurich argues that there is no coverage because the Buckeye Landfill was not an insured site. "Insured site" is defined as:

> any site to which waste materials were legally consigned or delivered by a *named insured* for storage, disposal, processing, or treatment, provided that the site
>
> > (a) is not and was never owned by, operated by, rented or loaned to a *named insured;* and
> >
> > (b) was duly authorized for such storage, disposal, processing, or treatment

under a permit issued by state or federal authority and in force at the time of all such consignment or deliver.

Zurich asserts that the Buckeye Landfill was not an insured site because it was not licensed to accept the sludge from Triangle. The facts clearly show that the Buckeye Landfill was not licensed by Ohio EPA to receive the sludge from Triangle. Triangle, however, argues .that any Ohio regulation prohibiting the disposal of the sludge is preempted by federal law. Triangle's argument is without merit. There is no preemption of Ohio's right to regulate its landfills. Therefore, since the Buckeye Landfill was not authorized to accept the disposal of the sludge from Triangle, the Buckeye Landfill was not an insured site. Accordingly, there exists no coverage under the PLI issued by Zurich.

■ The final issue to determine is whether Liberty and Zurich are estopped from denying coverage due to the actions they took after being notified by Triangle of the claim made by USEPA. In its notice of claim, Triangle specifically informed the insurers that it would honor a reservation of rights by the carriers. Both Liberty and Zurich agreed to partially reimburse Triangle's retained counsel until a determination of coverage was made. Subsequently, both carriers determined that no coverage existed and, therefore, there was no duty to defend. Furthermore, there is no evidence that the actions of Liberty or Zurich prejudiced Triangle by leaving it defenseless or seriously hampered in its ability to protect itself so as to warrant estoppel. As such, neither Liberty nor Zurich are estopped from denying coverage. *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163 (1982).

It is therefore ORDERED that the respective motions for summary judgment by Liberty, NJPLIGA, and Zurich should be, and the same are hereby, GRANTED, and the respective cross-motions for summary judgment by Triangle are DENIED.