**CHEMICAL LEAMAN TANK LINES, INC., Plaintiff,**

v.

**THE AETNA CASUALTY & SURETY COMPANY; Robin Anthony Gildart Jackson, as representative Underwriter at Lloyd's, London, et al., Defendants.**

**Civ. A. No. 89–1543 (SSB).**

United States District Court, D. New Jersey.

March 31, 1992.

Stephen D. Houck, Donovan, Leisure, Newton & Irvine, New York City, Stuart M. Feinblatt, Philip A. Bramson, Sills, Cummis, Zuckerman, Radin, Tischmann, Epstein & Gross, Newark, N.J., for plaintiff.

Brian J. Coyle, Peter E. Mueller, Hardwood Lloyd, Hackensack, N.J., for defendant Aetna Cas. & Sur. Co.

John C. McAndrews, Hannah M. O'Driscoll, Mendes & Mount, New York City, William J. Hanley, Ronca, McDonald & Hanley, Livingston, N.J., for defendants Jackson and London Market Insurers.

## OPINION

BROTMAN, District Judge.

Presently before the court are the following partial summary judgment motions:

1) plaintiff Chemical Leaman Tank Lines, Inc. ("Chemical Leaman") moves that this court find:

a) that the cleanup costs which it is obligated to pay pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") with respect to ground and surface water contamination in the vicinity of its Bridgeport, New Jersey facility constitute "damages" on account of "property damage" within the meaning of the relevant insurance policies issued by defendants; and

b) that the owned-property exclusion does not apply to remedial measures taken by Chemical Leaman that are designed to correct injury or to prevent further injury to the ground and surface waters of New Jersey;

2) defendant Aetna Casualty & Surety Co. ("Aetna") and, in a separate motion, defendants Robin Anthony Gildart Jackson, as representative Underwriter at Lloyd's London ("Jackson") and 48 London market insurance companies ("London Market Insurers") move that this court find:

a) that Pennsylvania law governs the policy interpretation issues in this action; and

b) that there is no insurance coverage for the environmental contamination at issue in this action under any insurance policy in effect on or after January 7, 1981.

## I. FACTS AND PROCEDURE

Chemical Leaman filed this declaratory judgment and damages action on April 12, 1989 arising from defendants' failure to provide coverage pursuant to certain comprehensive general liability ("CGL") and excess liability insurance policies. Aetna issued the CGL policies to Chemical Lea-

man for the period April 1, 1959 through April 1, 1985. Jackson and the London Market Insurers issued umbrella and excess liability insurance to Chemical Leaman for the period from April 1, 1958 through April 1, 1986.

Under Aetna's and the Jackson and the London Market Insurers' policies, the insurers agreed to pay on behalf of the insured all sums which the insured became legally obliged to pay as damages because of property damage.[1] Aetna's policies excluded coverage for damage to property owned or occupied by, rented to, used by, or in the care, custody or control of the insured.

For Aetna's policies issued after April 1, 1973 through the expiration of Aetna's coverage on April 1, 1985, the term "occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.... All bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." For the Jackson and London Market Insurers' policies which were in effect on or after January 1, 1980, "occurrence" was defined as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in ... property damage ... during the policy period." For these policies, Aetna and Jackson and the London Market Insurers were responsible to pay

---

1. Under the terms of each insurance policy issued by Aetna ˙to Chemical Leaman for the period April 1, 1967 through April 1, 1973, property damage was defined as "injury to or destruction of tangible property." For Aetna's policies issued for the period April 1, 1973 through April 1, 1985, property damage was defined as: 1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or 2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Prior to April 1, 1967, the policies issued by Aetna to Chemical Leaman used the terms "damages because of injury to or destruction of property" as opposed to "property damage."

Under the terms of the Jackson and the London Market Insurers' policies in effect as of January 1, 1980, "property damage" was defined as "loss of or direct damage to or destruction of tangible property" and "damages" was defined as "damages for loss of use of property resulting from property damage (other than property owned by the Name Assured)."

all sums for property damage arising out of each "occurrence."

Chemical Leaman is a tank truck company specializing in the transportation of various chemicals and other liquids. Since 1960, it has operated its Bridgeport truck terminal facility providing tank truck cleaning services, located in Logan Township, Gloucester County, New Jersey. In February, 1969, pursuant to complaints of odors emanating from the cleaning process and the on-site ponds and lagoons in which rinse water from the cleaning process was disposed of, the New Jersey Department of Health issued a Departmental Order to Chemical Leaman to construct a waste water treatment and/or disposal plant as a remedy for the odor problem. After Chemical Leaman installed a new rinse water containment system, the ponds and lagoons were drained and filled.

On or about January 7, 1981, as a result of a preliminary investigation, the New Jersey Department of Environmental Protection ("NJDEP") requested that Chemical Leaman undertake a hydrogeologic investigation to determine the extent and degree of groundwater contamination resulting from its facility operations. The hydrogeologic investigation indicated that certain areas of the groundwater at and in the vicinity of the facility were contaminated with hazardous substances. The EPA concluded that the ponds and lagoons ("the Site") were the primary sources of groundwater contamination.

In September 1984, the Site was placed on the National Priorities List of Superfund sites pursuant to Section 105 of CERCLA (42 U.S.C. § 9605). The EPA has alleged that the presence of hazardous substances at the facility and their migration to surrounding soils and groundwater constitute a release within the meaning of Section 101(22) of CERCLA (42 U.S.C. § 9601(22)). As owner and operator of the Bridgeport facility, Chemical Leaman is strictly liable under CERCLA for damages for injury to, destruction of, or loss of natural resources, as well as the reasonable costs of assessing such damage to natural resources, and for all costs of removal or remedial action incurred by the United States or the state of New Jersey. Chemical Leaman's liability for these damages is retroactive, joint and several, and is imposed regardless of fault. *See* Section 107 of CERCLA (42 U.S.C. § 9607).

In July, 1985, Chemical Leaman entered into an Administrative Order on Consent ("1985 Order") with the EPA pursuant to CERCLA.[2] The 1985 Order directed Chemical Leaman to conduct a Remedial Investigation and Feasibility Study ("RI/FS") of the groundwater. The 1985 Order also provided substantial civil penalties and punitive damages amounting to three times the total costs incurred by the government should Chemical Leaman fail to take proper action. Chemical Leaman has incurred substantial costs in connection with its conducting of the groundwater RI/FS. Because the RI/FS contained sufficient groundwater data to determine an appropriate remedy, the groundwater remediation is currently proceeding.

On or about April 18, 1988, Chemical Leaman filed a notice of claim under some of the Aetna policies, which included a description of the investigation and remediation work undertaken by Chemical Leaman at the Site. On or about March 30, 1989, Chemical Leaman notified Jackson and the London Market Insurers of its claim relating to the Site. The defendants have refused to defend or indemnify Chemical Leaman for the investigation and remediation costs incurred at the Site or for any future costs Chemical Leaman will incur in con-

---

**2.** The 1985 Order contained, *inter alia,* the following findings:

   1) four residences located approximately 100 feet north of the terminal site showed contamination in their drinking water wells; and

   2) the drinking water wells of at least three more persons were threatened by the direction and proximity of the contamination.

Based on the Administrative Record and the 1985 Order, the Regional Administrator determined that the release and the threatened release of one or more of the hazardous substances from the Bridgeport terminal facility may present "an imminent and substantial endangerment to the public health and welfare and the environment."

nection with the cleanup or remediation of the Site.

## II. DISCUSSION

### Summary Judgment Standard

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if

the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

### 1) New Jersey or Pennsylvania Law?

Defendants contend that Pennsylvania law should govern the policy interpretation issues in this action. They contend that since Chemical Leaman's principal place of business is in Pennsylvania and that since Chemical Leaman employed Pennsylvania insurance brokers to procure and negotiate the insurance policies at issue, Pennsylvania law should apply. Moreover, defendants contend that none of its policies at issue applied solely to Chemical Leaman's Bridgeport terminal facility but to all of Chemical Leaman's operations throughout the United States and unless Pennsylvania law applies to all sites, these policies may be interpreted in diverse, if not contradictory ways. Aetna also maintains that all of its policies at issue in this litigation were contracted for in Pennsylvania.

A federal court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988). In New Jersey, "the law of the place of the contract will govern the determination of the rights of the parties" under an insurance policy "unless the dominant and significant relationship of another state to the parties and the underlying issues dictates that this basic rule should yield." *State Farm Automobile Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 37, 417 A.2d 488 (1980).

This court recently held, in *Leksi v. Federal Ins. Co.*, 736 F.Supp. 1331 (D.N.J. 1990) that:

[i]n the absence of a choice of law provision, the state where the toxic waste comes to rest is the state whose law will apply, provided that it was reasonably foreseeable that the waste would come to rest there. With the exception of situations in which the adjoining states dispute their boundary, the rule is elegant

in its simplicity and properly recognizes that the host state's interest in its environment is superior to that of the law of the place of the contract.

*Id.* at 1336; *accord Transamerica Insurance Company v. Durkin,* 1991 WL 246927 at *3 (E.D.Pa. November 19, 1991). *Leksi* involved a coverage dispute under CGL policies regarding the insurers' duty to defend and indemnify the insured against claims asserted in several enforcement actions relating to the cleanup of New Jersey landfills.[3] Byproducts of the *Leksi* plaintiff's manufacturing process related to production of dentures were transported to various landfills in New Jersey from its plants in Pennsylvania. This court held that even though the insurance policies were negotiated, signed and delivered in Pennsylvania, New Jersey law should apply because of New Jersey's interest in the cleanup of its landfills. This site-specific rule of law prevents insurance companies from securing restrictive interpretations of contracts based on the place of contracting. *Accord Transamerica* at *2.

■ The present case provides even a stronger argument for applying New Jersey law than do the facts presented in *Leksi* since Chemical Leaman's terminal facility which generated the hazardous substances is located in New Jersey. If a host state, New Jersey in this instance, can protect its environment by applying its laws to corporations with plants and facilities outside the state, there is no reason it should not apply these same laws to corporations with plants and facilities within its borders.

Certainly, it is reasonably foreseeable that the waste generated by a New Jersey plant would come to rest in New Jersey. *Accord Johnson Matthey v. Pennsylvania Manufacturers' Association,* 250 N.J.Super. 51, 62–63, 593 A.2d 367 (App.Div.1991)

(citing *Leksi* with approval and applying New Jersey law rather than the law of the place of contracting because quality of New Jersey's interest in environment superseded Pennsylvania's interest in determining contractual issue, where the toxic wastes allegedly came from insured's New Jersey plants); *see Armotek Industries v. Employers Insurance of Wausau,* 952 F.2d 756, 759 n. 4 (3d Cir.1991). Moreover, since this is a case, like *Leksi,* involving waste sites in just one state, the court need not address the issue of interpreting insurance contracts when the waste sites are located in several states. *See National Starch & Chemical Corp. v. Great American Insurance Cos.,* 743 F.Supp. 318 (D.N.J.1990).[4]

For the foregoing reasons, the court holds that the laws of New Jersey shall govern the policy interpretation issues in this case.

### 2) Cleanup Costs as Damages

■ Chemical Leaman moves that this court find that the cleanup costs which it is obligated to pay pursuant to CERCLA with respect to ground and surface water contamination in the vicinity of its Bridgeport, New Jersey facility constitute "damages" on account of "property damage" within the meaning of the relevant insurance policies issued by defendants. The defendants contend that cleanup costs are not damages, but costs incident to complying with equitable and injunctive relief.

In *Broadwell Realty v. Fidelity & Casualty Company,* 218 N.J.Super. 516, 528 A.2d 76 (App.Div.1987), the court held that "costs of preventive measures taken by [the insured] on its own property in response to the [NJ]DEP directive which

---

**3.** The *Leksi* plaintiff is a party-defendant in *New Jersey Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.,* Civil No. 84–152(SSB) (D.N.J.) and in *United States v. Rohm & Haas Co.,* 721 F.Supp. 666 (D.N.J.).

**4.** It is true that the insurance policies can be interpreted in diverse if not contradictory ways if the law of the state where the waste is located always applies. However, as the *Johnson Mat-*

*they* court stated, there are "two opposing axes of possible uniformity ... [o]ne axis is uniform national interpretation of a single policy's language.... [t]he opposing axis is uniform interpretation that is site-specific." *Johnson Matthey* at 60–61, 593 A.2d 367. Moreover, nothing prevents the contracting parties to insurance contracts to provide a choice of law provision in the contracts. *Leksi* at 1336.

were designed to abate the continued flow of contaminants on the adjacent land are recoverable...." *Id.* at 525–526, 528 A.2d 76. Moreover, the *Broadwell* court stated:

we are entirely satisfied that the [NJ]DEP's directive which threatened to assess [plaintiff] an amount equal to triple the costs of the prospective cleanup operation constituted a claim for damages within the meaning of the policy language. The insured's expenditures were made to discharge its legal obligation to the [NJ]DEP or, at the very least, to prevent what would have been an avoidable legal obligation to pay damages to a third party. The expenses were incurred by virtue of the *in terrorem* and coercive effect of the [NJ]DEP's directive. The harm to the State, by reason of the discharge of pollutants into its streams, and to others was continuing and ongoing. Further peril was both imminent and immediate. Under these circumstances, the abatement and response expenses constituted "damages" which [plaintiff] was legally obliged to pay.

*Id.* at 527–528; *accord CPS Chemical v. Continental Insurance,* 222 N.J.Super. 175, 536 A.2d 311 (App.Div.1988).

Similarly, in *Township of Gloucester v. Maryland Casualty Company,* 668 F.Supp. 394 (D.N.J.1987), this court held that cleanup costs do constitute "damages" on account of "property damage." *Id.* at 399–400 (cleanup costs for surrounding ground and surface waters); *accord Chesapeake Utilities Corp. v. American Home Assurance Co.,* 704 F.Supp. 551, 560–561 (D.Del.1989); *Centennial Insurance Co. v. Lumbermens Mutual Casualty Co.,* 677 F.Supp. 342, 349–350 (E.D.Pa.1987); *NJDEP v. Signo Trading International, Inc.,* 235 N.J.Super. 321, 331, 562 A.2d 251 (App.Div.1989); *see New Castle County v. Hartford Accident and Indemnity Co.,* 933 F.2d 1162, 1188–1190 (3d Cir.1991) (applying Delaware law); *Morrisville Water & Light Department v. United States Fidelity & Guaranty Co.,* 775 F.Supp. 718, 725–727 (D.Vt.1991); *Broadhead v. Hartford Casualty Insurance Company,* 773 F.Supp. 882, 900–901 (S.D.Miss.1991).

However, cleanup costs pertaining solely to damage to the insured's property and not to prevent off-site contamination is not within the coverage provided. *Broadwell* at 528–529, 528 A.2d 76; *accord CPS Chemical* at 187, 536 A.2d 311.

Thus, the court holds that Chemical Leaman's cleanup costs which it is obligated to pay pursuant to CERCLA with respect to ground and surface water contamination in the vicinity of but not at its Bridgeport, New Jersey facility constitute "damages" on account of "property damage" within the meaning of the relevant insurance policies issued by defendants.

3) Owned–Property Exclusion

■ Chemical Leaman moves that this court find that the owned-property exclusion does not apply to remedial measures taken by Chemical Leaman that are designed to correct injury or to prevent further injury to the ground and surface waters of New Jersey. Chemical Leaman contends that despite the fact that its property may have been the source of the contamination, and some or all of the remedial measures may be conducted there, those measures are directed at correcting injury to third-party property, the contamination of the ground and surface water and neighboring private wells.

The "owned-property" exclusion does not apply to costs incurred as a result of injury to third-party property. *Gloucester Township* at 400; *NJDEP* at 330–336, 526 A.2d 251; *Diamond Shamrock Chemicals Co. v. Aetna Casualty & Surety Co.,* 231 N.J.Super. 1, 11–12, 554 A.2d 1342 (App. Div.1989); *Summit Associates Inc. v. Liberty Mutual Fire Insurance Co.,* 229 N.J.Super. 56, 63–64, 550 A.2d 1235 (App. Div.1988); The *Diamond Shamrock* court held:

the critical question ... was not whether the measures for which reimbursement was sought had been taken on the insured's own property or on property of a third party. The "owned property" exclusion does not purport to exclude claims because they are for sums expended for work performed within the

premises owned by the insured. It excludes claims for sums which the insured is obligated to pay for "property damage to ... property owned ... by ... the insured." Claims arising out of injury to property of others for which the insured is responsible are covered by the terms of the policies even if the insured's damage are measured in part by the cost for remedial work which has to be performed on the insured's own property. *Diamond Shamrock* at 12, 554 A.2d 1342; *accord Broadwell* at 528, 528 A.2d 76. If the contamination neither damaged nor threatened to damage the property of someone other than the insured, the insurer is not responsible for the cleanup costs. *Diamond Shamrock* at 13–14, 554 A.2d 1342; *Summit Associates* at 64, 550 A.2d 1235.

The EPA has already determined that the Site was the primary source of the groundwater contamination in the vicinity of the Bridgeport terminal facility and that other private wells are threatened with contamination. The court will therefore grant plaintiff's motion for summary judgment by holding that the owned-property exclusion does not apply to remedial measures taken by Chemical Leaman that are designed to correct injury or to prevent further injury to the ground and surface waters in the vicinity of its Bridgeport facility.

4) Insurance Policies in Effect on or After January 7, 1981

Defendants move that this court find that there is no insurance coverage for the environmental contamination at issue in this action under any insurance policy in effect on or after January 7, 1981. On or about January 7, 1981, as a result of a preliminary investigation, the NJDEP requested that Chemical Leaman undertake a hydrogeologic investigation to determine the extent and degree of groundwater contamination resulting from its Bridgeport facility operations.[5] By letter dated May 18, 1982, Chemical Leaman assumed responsibility for the water quality deterioration.[6]

Defendants argue that since the relevant policies require that property damage be caused by an occurrence during the policy period that is neither expected nor intended from the standpoint of the insured, there is no insurance coverage as a matter of law upon Chemical Leaman's receipt of the NJDEP's letter of January 7, 1981 because of Chemical Leaman's actual knowledge of the contamination. Chemical Leaman contends that since the release of contaminants was continuing and ongoing well after 1981, summary judgment should not be granted because the defendants have not offered any evidence that Chemical Leaman was aware of the continuing nature of the occurrence prior to the 1985 Order.

For an "occurrence" policy, it is settled law that the insured is not entitled to coverage when it is aware of an occurrence prior to the policy period. *Gloucester Township* at 402–403; *see New Castle County* at 1191–1192 (applying Delaware law, no coverage if before the policy period, there is evidence indicating a substantial probability that a loss will occur). In cases in which the damage process is not a "defi-

---

5. The January 7, 1981 letter sent by the NJDEP to Chemical Leaman stated in relevant part: The results [of an investigation] indicated your on-site potable water supply well is heavily contaminated with organic chemicals.... [T]he Bureau of Potable Water took samples at several other locations in the vicinity of your facility. The results of these wells also show organic contamination.... The preliminary investigations of the Department indicate that the groundwater in the vicinity of Chemical Leaman is contaminated. In order to determine the extent and degree of contamination, it is requested that a hydrogeologic consultant be contacted to evaluate the contamination.

6. Chemical Leaman's letter of May 18, 1982 to the NJDEP stated the following:

As a result of the report prepared by the consulting firm of ERM Inc. entitled "Hydrogeologic Investigation of Groundwater Contamination at the Chemical Leaman Tank Lines Bridgeport Facility," dated September 8, 1981, Chemical Leaman assumes responsibility of water quality deterioration in the shallow and intermediate water bearing zones in the areas of the close settling impoundments, drum storage area and present settling tanks all within the confines of its property boundaries.

nite, discrete event, the date of occurrence should be the continuous period from exposure to manifestation of damage." *Gottlieb v. Newark Insurance Company,* 238 N.J.Super. 531, 535, 570 A.2d 443 (App.Div. 1990).

Genuine issues of material fact exist if it is unclear when all of the damage from the contaminants was capable of being known or predicted. *See Id.* at 537–538, 570 A.2d 443. In addition, genuine issues of material fact exist if it is unclear whether the insured engaged in continuous pollution of the ground and surface waters as a regular course of business after receiving notice of the contamination. *See American Mutual Liability Insurance Co. v. Neville Chemical Co.,* 650 F.Supp. 929, 933 (W.D.Pa.1987) (applying Pennsylvania law).

■ The defendants have not convinced the court that the damage sustained by the date of the 1985 Order was capable of being known by Chemical Leaman or that Chemical Leaman continued to engage in continuous pollution of the ground and surface waters upon receipt of the January 7, 1981 NJDEP letter. In addition, defendants have not presented evidence demonstrating that Chemical Leaman either expected or intended to be responsible for CERCLA cleanup costs as of January, 1981. *Accord Liberty Mutual Insurance Co. v. Triangle Industries, Inc.,* 765 F.Supp. 881, 885 (N.D.W.Va.1991) (applying New Jersey law); *see also Morrisville Water* at 731. The court will deny defendants motion for summary judgment with respect to the policies in effect after January 7, 1981 because these factual issues still exist.

## III.  CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted and defendants' motions for summary judgment are denied.