254 N.J. Super. 43 (1992)
603 A.2d 61
THE GILBERT SPRUANCE COMPANY, PLAINTIFF-APPELLANT,
v.
PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND INSURANCE COMPANY OF NORTH AMERICA, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 6, 1992.
Decided February 14, 1992.
*44 Before Judges PETRELLA, R.S. COHEN and KESTIN.
Rapp, White, Janssen & German, attorneys for appellant (Henry H. Janssen on the brief).
Robinson & Sacharow and Sherr, Joffe & Zuckerman, attorneys for respondent (Steven Steingard and Mark C. Schultz on the brief).
Smith, Stratton, Wise, Heher & Brennan, attorneys for amicus curiae Insurance Environmental Litigation Association (Wendy L. Mager on the brief).
The opinion of the court was delivered by COHEN, R.S., J.A.D.
Plaintiff The Gilbert Spruance Company is a Pennsylvania corporation which manufactures paint in Philadelphia. Defendant Pennsylvania Manufacturers' Association Insurance Company *45 ("PMA") is a Pennsylvania insurer which is licensed to do business in New Jersey. From 1971 through 1988, PMA issued plaintiff comprehensive general liability policies. Each of them[1] contained a pollution exclusion clause in these words:
This insurance does not apply:
* * * * * * * *
(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. ... [emphasis added]
Plaintiff faces many toxic tort claims for personal injury and property damage, and actions for remediation, damages and penalties by the Environmental Protection Agency and the New Jersey Department of Environmental Protection (now the Department of Environmental Protection and Energy). They all allege that plaintiff is responsible for generating hazardous waste products in Pennsylvania that were deposited in landfills in New Jersey and created environmental dangers there.
Plaintiff sought defense and coverage from PMA, which disclaimed on the strength of the pollution exclusion. Plaintiff then sued for a declaratory judgment.[2] Plaintiff moved for summary judgment on PMA's duty to defend, and PMA was permitted to make an oral cross-motion.[3] The Law Division judge held that the meaning and consequence of the pollution exclusion was to be determined under Pennsylvania law, and that the exclusion supported PMA's disclaimer, because in *46 Pennsylvania the "discharge, dispersal, release or escape" of the waste materials was not considered to be "sudden and accidental." Lower Paxton Tp. v. United States Fidelity & Guar. Co., 383 Pa.Super. 558, 557 A.2d 393, 399 (1989). Under New Jersey law, sudden and accidental discharges can include the gradual release of pollutants. Broadwell Realty Servs., Inc. v. Fidelity & Casualty Co., 218 N.J. Super. 516, 530-36, 528 A.2d 76 (App.Div. 1987).
The Law Division judge made his decision before Johnson Matthey, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co., 250 N.J. Super. 51, 593 A.2d 367 (App.Div. 1991), leave to appeal denied, Nov. 15, 1991, in which we dealt with a very similar problem. Johnson Matthey was a Pennsylvania manufacturer whose insurers, including PMA, disclaimed on toxic tort and administrative claims similar to those made against plaintiff here as a generator of hazardous wastes. The Johnson Matthey plant, unlike plaintiff's, was located in New Jersey; the hazardous wastes, like plaintiff's, allegedly went to landfills in New Jersey.
In Johnson Matthey, we recognized that our choice of law approach was controlled by State Farm Mut. Auto. Ins. Co. v. Simmons' Estate, 84 N.J. 28, 417 A.2d 488 (1980). There, the Supreme Court ruled that the law of the place of an insurance contract ordinarily governs the choice of law because it will generally comport with the reasonable expectations of the parties concerning the principal location of the insured risk and will furnish needed certainty and consistency. Id. at 37, 417 A.2d 488. The Court also held, however, that the basic rule yields to the dominant and significant relationship of another state with the parties, the transaction and underlying issue as determined by a comparison and evaluation of state contacts, and state policies affected by, and governmental interest in, the outcome of the controversy. Id.; Johnson Matthey, 250 N.J. Super. at 54-55, 593 A.2d 367; see Restatement (Second) of Conflicts of Laws §§ 188, 193 (1971).
*47 The basic State Farm rule applies where the state of the contract and the principal location of the insured risk are the same. It is therefore not inconsistent with § 193 of the Restatement. Under § 193, the validity of a casualty insurance policy and the rights it creates are to be found in the law of the state the parties understood to be "the principal location of the insured risk," unless another state has a more significant relationship with respect to the particular issue to be decided.
We reached two significant conclusions in Johnson Matthey. The first was that, since New Jersey had a paramount interest in the remediation of New Jersey toxic waste sites, and in the fair compensation of victims of New Jersey pollution, and since financial resources for those purposes are of significance, New Jersey's urgent concern for the health and safety of its citizens therefore "extends to assuring that casualty insurance companies fairly recognize the legal liabilities of their insureds." 250 N.J. Super. at 57, 593 A.2d 367.
The second significant conclusion of Johnson Matthey was that the state of contracting can be an artificial and arbitrary designation; and that the interest of Pennsylvania, as the state of contracting, was relatively remote. It had no interest in preventing fair and predictable application of New Jersey law to Pennsylvania insurance contracts covering New Jersey risks. If it had an interest in uniformity of interpretation of Pennsylvania insurance contracts in other states, that goal was, in our view, illusory, and secondary to New Jersey's paramount interest in the health and safety of its people. Id. at 58-60, 593 A.2d 367. Finally, we observed that the insurers were fully aware that they were issuing policies to cover New Jersey risks whose liabilities were measured by New Jersey law. Id. at 60, 593 A.2d 367.
We held that a casualty insurance policy, wherever written, which is purchased to cover a New Jersey risk is subject to interpretation of its coverage and exclusion language according to New Jersey substantive law. Id. at 61, 593 A.2d 367. *48 Further, we held that covering a New Jersey risk means at least covering a property or operation owned, occupied or conducted in New Jersey. Id. at 62, 593 A.2d 367. It may mean more, we said, "but we need not look further today. But see Leksi, Inc. v. Federal Ins. Co., 736 F. Supp. 1331 (D.N.J. 1990)." Id.
The day has arrived to look further and deal with the issue presented and decided in Leksi, because it is the same as the one presented here.
Leksi was a Delaware corporation. Like plaintiff here, it operated in Pennsylvania and bought insurance there, and created waste products which were hauled to New Jersey for disposal. It sought the same kind of declaration of coverage for New Jersey toxic tort claims and administrative proceedings as sought by Johnson Matthey. The difference between the two cases is that Leksi, like plaintiff here, operated in Pennsylvania and created its hazardous wastes there. The wastes reached New Jersey only because haulers brought them here.
In Leksi, Judge Brotman analyzed the interests of Pennsylvania and New Jersey and found New Jersey's much more significant. He recognized the insurer's argument that New Jersey may have the overriding interest in seeing that the cleanup is done, but not in determining who will pay for it. 736 F. Supp. at 1333. Judge Brotman responded that it was
difficult to imagine any interest that New Jersey could have that would be more compelling, or, in the language of State Farm, more "dominant and significant," than its interest in determining the availability of funds for the cleanup of hazardous substances located within its borders. [Id. at 1335.]
We expressed the same sentiment in Johnson Matthey, 250 N.J. Super. at 57, 593 A.2d 367. So did the Court of Appeals in Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co., Inc., 842 F.2d 977, 985 (8th Cir.) (en banc), cert. denied, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988).
Judge Brotman also recognized that the protection of justified expectations of the parties was an important consideration. Leksi, 736 F. Supp. at 1336; see Restatement § 6(2)(d). In that *49 regard, he said that New Jersey is next to Pennsylvania; it was foreseeable that Leksi's wastes would be deposited here; it was therefore foreseeable that the law of New Jersey would control the insurance coverage issue. 736 F. Supp. at 1336. In this case also, it is clearly foreseeable that waste from a Philadelphia paint factory will end up in New Jersey, and that generator responsibilities will be measured by New Jersey law.
The opposite view is represented by dicta in Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co., 233 N.J. Super. 463, 559 A.2d 435 (App.Div. 1989). Westinghouse brought suit against 144 insurers for declarations of nationwide coverage for toxic tort claim and site remediation liabilities wherever located. Although no choice-of-law problems were then before the Law Division, the judge dismissed the out-of-state aspects of the case, for fear of the need to apply in one case the laws of a great number of states.
The Appellate Division reversed. Judge Pressler wrote for the court:
[W]e ... cannot conceive that the operative contract language in a single set of insurance policies issued by a group of insurers for the purpose of providing integrated comprehensive coverage for nationwide risks could mean something different in every state of the union.... [W]hen comprehensive nationwide coverage is purchased, it is surely the expectation of both insured and insurer that what the insured has bought and the insurer has sold is a single protection from liability irrespective of the particular state law under which that liability is determined so long as the risk, whether or not ultimately resulting in liability, is within the policy coverage. [Id. at 476, 559 A.2d 435.]
Westinghouse was followed by Judge Ackerman in National Starch & Chem. Co. v. Great Amer. Ins. Co., 743 F. Supp. 318 (D.N.J. 1990).
In Johnson Matthey, we explained our disagreement with Westinghouse. In short, we concluded that nationwide uniformity of policy interpretation was an illusory goal, not truly achievable or necessarily preferable. If it is associated with the place of the contract, it is associated with an arbitrary and usually irrelevant choice which § 193 of the Restatement discards. Site-specific uniformity, on the other hand, is achievable, *50 and represents a choice of the law of the jurisdiction that is most concerned with the outcome.
If uniformity is achieved on a site-specific basis, the uniformity will relate to a particular legal proceeding and may aid in its resolution. The cost, however, is that it cannot help but make some multistate insurance policy language mean one thing in one state and something else in another. [250 N.J. Super. at 64, 593 A.2d 367.]
If the parties to an insurance contract truly prize uniform interpretation of multistate insurance policy language, they can frequently achieve it by expressing a choice of law in the contract. See Restatement § 187; cf. McCabe v. Great Pacific Century Corp., 222 N.J. Super. 397, 537 A.2d 303 (App.Div. 1988). Their failure to express such a choice tends to show that uniform interpretation was not a conscious goal of the contracting parties.
As Restatement § 193 recognizes, some casualty insurance risks are rooted to a place; some are not. A fire insurance policy relates to a particular building; a policy covering a manufacturer for products liability does not. A comprehensive general liability policy covers the "principal location of the insured risk," Restatement § 193, but the subject matter of the insurance is an operation or activity and not only a piece of real estate. See id. comment b. Where that operation or activity is predictably multistate, the significance of the principal location of the insured risk diminishes, and it becomes easier to identify a state having a more significant relationship with respect to a particular issue. The identification process is made in consideration of the factors listed in Restatement § 6.[4]
*51 We hold that New Jersey courts should interpret according to New Jersey substantive law a pollution exclusion clause contained in a comprehensive general liability insurance policy, wherever written, which was purchased to cover an operation or activity, wherever its principal location, which generates toxic wastes that predictably come to rest in New Jersey and impose legal liabilities there on the insured. In such a case, New Jersey has the dominant and significant relationship with the parties, the transaction, and the outcome of the controversy.
We do not dispose of the question of the effect of the choice of law on the substantive coverage issue. That has not been the focus of the parties' attention on appeal, and we leave it for exploration in the Law Division.
The final matter on appeal deals with a factual problem resolved by the Law Division judge after a plenary hearing. It was whether plaintiff's 1971 and 1972 policies, which could not be found, contained pollution exclusion clauses. On the basis of substantial credible evidence, the Law Division judge concluded that the lost policies did contain the disputed clauses. We thus affirm that part of the decision.
Affirmed in part, reversed in part, and remanded for further proceedings.
NOTES
[1] As to pre-1973 policies, see infra at 51.
[2] It actually started two suits, which were consolidated. Insurance Company of North America was the other insurer defendant, but it was dismissed as the result of a settlement.
[3] One of plaintiff's issues on appeal was whether it was error to permit defendant to make the oral cross-motion without notice. Because of the meritorious outcome in this court, we need not deal with the issue.
[4] Those factors are:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.