265 N.J. Super. 230 (1993)
626 A.2d 81
J. JOSEPHSON, INC., PLAINTIFF,
v.
CRUM & FORSTER INS. CO., FIREMAN'S FUND INS. CO., HARTFORD ACCIDENT & INDEMNITY CO., LUMBERMENS MUTUAL CASUALTY CO., PACIFIC EMPLOYERS INS. CO., AND ZURICH-AMERICAN INS. CO., DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided: April 16, 1993.
*232 Ellis I. Medoway, and Thomas Cinti, on behalf of plaintiff, J. Josephson, Inc. (Archer & Greiner attorneys).
Dennis Smith on behalf of defendant, Crum & Forster Insurance Company (McElroy, Deutsch & Mulvaney attorneys).
Barry A. Kustin, on behalf of defendant, Fireman's Fund Insurance Company (Golden, Rothschild, Spagnola & DiFazio attorneys).
John M. Bowens on behalf of defendant, Hartford Accident & Indemnity Co. (Purcell, Ries, Shannon, Mulcahy & O'Neill attorneys).
Wendy Smith on behalf of defendant, Lumbermens Mutual Casualty Company (Sellar Richardson attorneys).
James A. Pinderski of the Illinois Bar, pro hac vice on behalf of defendant, Lumbermens Mutual Casualty Company (Tressler, Soderstrom, Maloney & Priess attorneys).
Gail Russell on behalf of Pacific Employers Insurance Company (Mudge, Rose, Guthrie, Alexander & Ferdon attorneys).
Peter Petrou on behalf of Zurich-American Insurance Company (Cuyler, Burke & Matthews attorneys).
NAPOLITANO, J.S.C.

I. INTRODUCTION
The plaintiff, J. Josephson, Inc. (Josephson), seeks a declaration of insurance coverage as well as indemnification for costs incurred in connection with the remediation of waste sites and the defense of environmental claims in which Josephson has been named as a potentially responsible party (PRP). Josephson here moves to apply New Jersey law to the interpretation of the pollution *233 exclusion clause contained in the various policies at issue.[1] This court grants Josephson's application.

II. FACTS
Josephson, a Georgia corporation, is a manufacturer of wallcoverings with its sole place of business in South Hackensack, New Jersey. Certain wastes are produced as a by-product of this activity. Between 1978 and 1987, Josephson purchased comprehensive general liability insurance contracts from the various defendant carriers through John M. Riehle, Inc., a New York insurance broker. A representative of Riehle negotiated the terms of the policies with Josephson in New Jersey and the premium payments were paid out of Josephson's New Jersey bank accounts to the defendant insurance carriers. Additionally, the defendant insurance carriers performed annual on-site inspections for underwriting purposes at the plaintiff's New Jersey facility.
During this time, Josephson contracted with third party waste haulers to transport and dispose of the by-product waste. The waste haulers retained by Josephson were licensed in New Jersey and disposed of the waste at appropriately licensed facilities. Subsequently, New Jersey and federal agencies implicated Josephson as a PRP for cleanup activity at five hazardous waste sites. Three of the named sites are located in New Jersey, while the fourth site is located in New York and the fifth in Pennsylvania. After being notified of its potential liability, Josephson submitted a claim to the defendant carriers. The carriers denied coverage based on the pollution exclusion clause, a paradigm of which states:

*234 This insurance does not apply ... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. [emphasis added]
Brief for plaintiff at 21.
Josephson here moves to apply the law of New Jersey in determining the extent of coverage provided under the pollution exclusion clause contained in the various policies.

III. LAW
Absent a choice of law provision, the traditional rule of lex loci contractus provided that the law of the state where the contract was created governed the substantive law applied to the interpretation of a contract. Buzzone v. Hartford Accident and Indemnity, Co., 23 N.J. 447, 452, 129 A.2d 561 (1957). The New Jersey Supreme Court in State Farm, etc., Ins. Co. v. Simmons' Estate, 84 N.J. 28, 417 A.2d 488 (1980), modified this basic rule with respect to casualty insurance contracts by establishing an exception to the general rule. The State Farm court held that:
[I]n an action involving the interpretation of a[] [casualty] insurance contract, the law of the place of contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied unless the dominant and significant relationship of another State to the parties and the underlying issue dictates that this basic rule should yield.
Id. at 37, 417 A.2d 488.
State Farm's substantial interest test has found utility in analyzing and resolving choice of law issues arising in environmental litigation, and it gives rise to the seminal case on this subject matter which guides this court, Johnson Matthey v. Pa. Mfrs.' Ass'n, 250 N.J. Super. 51, 593 A.2d 367 (App.Div. 1991). There, the Appellate Division addressed whether New Jersey or Pennsylvania law applied to the interpretation of a general liability clause in an environmental casualty policy providing coverage only for "sudden and accidental" pollution. Johnson Matthey, Inc. (JMI) was a Pennsylvania corporation with its headquarters and primary *235 business in Pennsylvania. In addition to its Pennsylvania enterprises, JMI owned and operated a manufacturing plant in Winslow, New Jersey that disposed of its waste in New Jersey landfills. After these New Jersey landfills were designated by state and federal authorities for cleanup activity, JMI's insurers, asserting that the pollution was not "sudden and accidental," denied coverage.
The Johnson Matthey court held that New Jersey law applied to the pollution exclusion clause because New Jersey had a substantial interest in the remediation of hazardous waste sites located within its borders, even though the State was not the place where the contract was signed. Id. at 61, 593 A.2d 367. New Jersey's interest, the court stated, "extends to assuring that casualty insurance companies fairly recognize the legal liabilities of their insureds." Id. at 57, 593 A.2d 367. The Johnson Matthey court explained that "[t]he existence or absence of insurance proceeds [could] very well determine whether or not a waste site is remediated or a toxic tort victim is compensated." Id. In support of its decision, the Johnson Matthey court further reasoned that although Pennsylvania was the place of contracting, JMI owned and operated, at the time of contracting, a New Jersey plant that produced hazardous waste. Thus, the casualty policies at issue were specifically purchased to cover this risk and it was reasonable to assume that the contracting parties contemplated that New Jersey law would apply to the New Jersey sites. Id. at 60, 593 A.2d 367.
Recently, in Gilbert Spruance Co. v. Pa. Mfrs.' Ass'n, 254 N.J. Super. 43, 603 A.2d 61 (App.Div. 1992), the Appellate Division again was confronted with deciding whether to apply New Jersey or Pennsylvania law when interpreting the "sudden and accidental" language in an environmental casualty policy. Gilbert Spruance, a Pennsylvania corporation suing for declaration of coverage, manufactured paint in Philadelphia, Pennsylvania. Hazardous waste products produced from its Philadelphia operations were deposited in a New Jersey landfill, resulting in environmental *236 contamination. This contamination raised health and safety concerns that were New Jersey's sole connection to the parties and the contract at issue. Determining that this sole connection amounted to a substantial interest, the Gilbert Spruance court held that New Jersey law applied to the interpretation of the general liability clause. The court concluded:
New Jersey Courts should interpret according to New Jersey substantive law a pollution exclusion clause contained in a comprehensive general liability insurance policy, wherever written, which was purchased to cover an operation or activity, wherever its principle location, which generates toxic wastes that predictably come to rest in New Jersey and impose legal liabilities there on the insured.

Id. at 51, 603 A.2d 61 (emphasis added).
Previously, a New Jersey risk has been defined as "a property or operation owned, occupied or conducted in New Jersey". Johnson Matthey, 250 N.J. Super. at 62, 593 A.2d 367. Gilbert Spruance was significant because it expanded the realm of what is meant by covering a New Jersey risk. The new definition of "risk" articulated by the Gilbert Spruance court referred not only to facilities owned by the insured at the time of contracting, not only to New Jersey waste storage facilities where the insured's toxic or hazardous waste could have "predictably come to rest" in New Jersey irrespective of the state in which the waste was generated, but also to a New Jersey entity likely to be liable for clean-up costs irrespective of the state in which the waste was generated. Moreover, the opinion emphasized that New Jersey's particular interest in providing adequate funding for the clean-up of contaminated in-state sites is best served by applying New Jersey law to the interpretation of the pollution exclusion clause.
In reaching its conclusion, the Gilbert Spruance court relied heavily on the United States District Court's decision in Leksi, Inc. v. Federal Ins. Co., 736 F. Supp. 1331 (D.N.J. 1990). Leksi, a Delaware corporation, owned and operated manufacturing plants in Pennsylvania. The plants' toxic by-products were transported to various New Jersey landfills. The location of the waste sites was the sole contact between New Jersey and the parties, and between New Jersey and the casualty insurance policies. Applying *237 the State Farm substantial interest test, the Leksi court determined that New Jersey law applied to the interpretation of the insurance policies' pollution exclusion clause. As in Johnson Matthey and Gilbert Spruance, the Leksi court concluded that New Jersey had an overriding interest in "the cleanup of hazardous substances located within its boundaries." Id. at 1335. Although Pennsylvania was the state of contracting and negotiating, the District Court reasoned that Pennsylvania's interest, "pale[d] in comparison" to New Jersey's health and safety concerns. Id. at 1335-36. Even though the Leksi court utilized the substantial interest test, it went further to enunciate a new rule to confront environmental choice of law issues. The court stated: "[I]n the absence of a choice of law provision, the state where the toxic waste comes to rest is the state whose law will apply, provided that it was reasonably foreseeable that the waste would come to rest there." Id. at 1336. The court believed this rule would "provide[] a simple method" for deciding "post facto" environmental choice of law issues. Id.
But the reasoning behind the Appellate Division's opinion in Gilbert Spruance was not so mechanistic as defendants here would argue or as the U.S. District Court articulated in Leksi. For if the location of the waste might "impose legal liabilities [] on the insured," Gilbert Sprunce, 254 N.J. Super. at 51, 603 A.2d 61, and the insured is located in New Jersey, then our public policy requires judicial concern for the viability of the insured to clean up sites even if the drain on that viability is the cost of cleaning up a non-New Jersey site.

IV. ANALYSIS

A.
In this case, as in the cases previously discussed, the choice of law determination is a critical issue because New Jersey has adopted a more expansive interpretation of the "sudden and accidental" language contained in pollution exclusion clauses than *238 either New York or Pennsylvania. Appellate courts in New York and Pennsylvania have held that pollution occurring gradually is not "sudden." Johnson Matthey, 250 N.J. Super. at 54, 593 A.2d 367 (citing Lower Paxton Tp. v. United States Fidelity and Guar. Co., 383 Pa.Super. 558, 557 A.2d 393 (Pa.App. 1989) [interpreting the term "sudden" as used in the pollution exclusion clause to mean an event that occurs abruptly]); Borg-Warner Corp. v. INA, 577 N.Y.S.2d 953, 174 A.D.2d 24 (A.D.3 Dept. 1992) (holding that the term "sudden" contained in pollution exclusion clauses means to occur abruptly or quickly or over a short period of time). New Jersey Courts, however, have ruled that "sudden" discharges include gradual releases. Johnson Matthey, 250 N.J. Super. at 54, 593 A.2d 367 [citing Broadwell Realty Serv., Inc. v. Fidelity & Cas. Co., 218 N.J. Super. 516, 528 A.2d 76 (App.Div. 1987)]. Thus, those Josephson sites which have suffered contamination through gradual release are likely to be excluded from coverage under Pennsylvania and New York law, but are not automatically excluded from coverage under New Jersey law. Mindful of this conflict, this Court is now asked to decide which state's law applies to the interpretation of the pollution exclusion clauses contained in the various policies, covering five hazardous waste sites in three different states.
This question presents two similar, but distinct issues. The first is whether New Jersey has a substantial interest in applying its laws to the interpretation of the pollution exclusion clause regarding coverage for sites located in New Jersey. This issue is easily resolved by the explicit holdings of Johnson Matthey and Gilbert Spruance. Together, these cases establish that New Jersey has a substantial interest in the outcome of environmental litigation when hazardous waste is located within New Jersey. This interest is founded in New Jersey's reasonable concern in assuring adequate cleanup funds. Accordingly, this court holds that New Jersey law applies to the interpretation of the pollution exclusion clauses contained in the various policies between Josephson and the defendant carriers with respect to determining coverage for those sites located in New Jersey.

*239 B.
The second, more difficult issue, and one here of first impression is whether New Jersey law governs the interpretation of the pollution exclusion clauses when New Jersey has the more significant and pervasive contacts with the parties and the casualty policies than the state in which the hazardous waste resides. This issue likewise would have a simple resolution if the court were to apply the Leksi rule. If so, Pennsylvania law would apply to the hazardous waste site located in Pennsylvania, and New York law would apply to the New York site. This court disagrees, however, with the sweep and inflexibility that the District Court articulates in Leksi, despite the lure of the rule's simplicity. State Farm, to which this court is bound, dictates the standard to be employed when determining choice of law in New Jersey. 84 N.J. at 37, 417 A.2d 488. This court is required to sift through and analyze, however laborious the task, the competing and varied interests of the states involved and ascertain if the basic rule of lex loci contractus should yield. The Leksi rule implicitly, and erroneously, assumes that if a state has a toxic or hazardous waste site within its borders, then that state alone has a substantial interest for choice of law purposes, notwithstanding any additional contacts between the polluter or its liability carrier and any other state.
While the location of the waste site is important, it is just one of several factors to be considered in the substantial interest analysis; and while in some cases it may be, it is not always dispositive as to which state's law should apply. As the standard's nomenclature reveals, a litigant must show a state's substantial interest in seeing its law applied. To accomplish this, a litigant must identify some law or policy which generates the state's requisite interest in applying its law to the insurance contract's clauses at issue. Each state, however, has its own particular policies, laws, and jurisprudence concerning environmental regulations which often differ among states. Therefore, the relevance and weight that a state's environmental regulatory scheme enjoys in the substantial interest analysis varies greatly.
*240 There are several factors which must be considered when determining if another state has a substantial interest in having its law applied: (1) the relevant policies of the forum, (2) the relevant policies of other affected States in the determination of the particular issue, (3) the protection of justified expectations of the parties, (4) the basic policies underlying the particular field, (5) the needs of the interstate and international system, and (6) the ease in determination and application of the law applied. State Farm, 84 N.J. at 34, 417 A.2d 488.

1. Relevant Policies of the Forum.

As stated above, absent a contractual clause addressing choice of law, New Jersey's policy is to apply the law of the state with significant contacts to the litigation. It is uncontroverted that New Jersey has numerous and significant contacts with Josephson, the defendant carriers, and the casualty insurance policies at issue. Josephson has been located, since 1969, in South Hackensack, New Jersey. All of the defendant carriers are licensed and authorized to do business in New Jersey. The negotiations which produced the insurance policies here under review occurred in New Jersey. Further, during the relevant time period, defendant carriers performed annual on-site inspections for underwriting purposes at Josephson's facility in New Jersey. It is also not insignificant that the source of all the waste and the location of the party potentially responsible for the remediation is indisputably in New Jersey.
The Appellate Division has not hesitated, albeit on forum non conveniens and jurisdictional grounds to require the application of New Jersey law even where out-of-state sites were involved. Cf., Westinghouse v. Liberty Mut. Ins., 233 N.J. Super. 463, 559 A.2d 435 (App.Div. 1989) (action involved 144 insurers and 81 sites in 23 states) and Ruetgers-Nease v. Fireman's Ins., 236 N.J. Super. 473, 566 A.2d 227 (App.Div. 1989) (action involved sites in 2 states in addition to New Jersey).
*241 In the aggregate, New Jersey's contacts with the parties and insurance policies at issue give New Jersey a significant interest in the negotiations and the agreements ultimately reached and thus in the outcome of this litigation which will ultimately construe those agreements.

2. Relevant Policies of Other Affected States and the Relevant Intrests of Those States in Determination of the Particular Issue.

Undoubtedly, Pennsylvania and New York have legitimate and laudable concerns regarding the protection of their environments.[2] The crucial inquiry, however, is whether applying New Jersey law to New York and Pennsylvania waste sites compromises or significantly impinges upon their environmental concerns. This court finds that New Jersey law does neither.
Pennsylvania and New York adopt a more narrow interpretation of the pollution exclusion clause than New Jersey. Consequently, health and safety concerns arise when either New York or Pennsylvania law is applied to a New Jersey hazardous waste site because then insurance proceeds are less likely to be available to fund cleanup activity. Conversely, health and safety interests are not implicated when New Jersey's interpretation of the pollution *242 exclusion clause is applied to either New York or Pennsylvania hazardous waste sites because there is a greater likelihood that insurance proceeds will be available to fund cleanup activity. It was this interest in securing cleanup funds that the Johnson Matthey and Gilbert Spruance courts identified as the substantial interest which compelled these respective courts to apply New Jersey law to New Jersey sites (it was not Leksi's location of the waste rule, despite another state's more traditional contacts with those litigants). Citing to Johnson Matthey and Gilbert Spruance, the defendant carriers here argue that New York and Pennsylvania have a substantial interest in applying their laws to hazardous sites within their borders. The defendants' reliance on these cases is misplaced, however, because neither decision identifies relevant policies or interests that compel the application of New York or Pennsylvania law.
The defendant carriers also urge that Leksi's location of the waste rule is determinative in analyzing choice of law issues. Since the Superior Court of New Jersey is superior to the United States District Court for the District of New Jersey in interpreting New Jersey law, this court is not bound by Leksi and does not recognize Leksi as accurately articulating the law as it exists in New Jersey. Further, defendant carriers argue that application of New Jersey law would be contrary to Pennsylvania's and New York's interest in applying their more narrow interpretation of the pollution exclusion clause because it serves an environmental policy that deters pollution. By disfavoring coverage, the defendants assert, polluters are forced to pay clean-up costs directly from business assets, rather than through insurance premiums that can be absorbed as a cost of doing business. Pennsylvania and New York certainly have a strong interest in implementing their environmental policies on those entities that conduct business or are incorporated within their borders. But each state's paramount interest as articulated by their legislators is a healthy, safe, and clean environment. The allocation of costs for maintaining those policies must be subordinate to the enforcement of the policies themselves lest the policies become meaningless, notwithstanding *243 their everyday effect on people's lives. Cf. Abbott v. Burke, 100 N.J. 269, 495 A.2d 376 (1985) (right to education); Robinson v. Cahill, 62 N.J. 473, 303 A.2d 273 (1973) (right to education); Right to Choose v. Byrne, 91 N.J. 287, 450 A.2d 925 (1987) (right to funded abortion). Josephson's most significant contact with Pennsylvania and New York, however, is merely placing waste in the stream of commerce where it could forseeably come to rest in one of those states. This fortuitous connection is not sufficient to overcome New Jersey's significant and pervasive contacts with all the parties and casualty insurance policies.

3. The Protection of Justified Expectations; that is, the need for certainty, predictability, and uniformity of result.

Protecting the justified expectations of contracting parties is a basic premise underlying the field of contracts. State Farm, 84 N.J. at 39, 417 A.2d 488; Restatement (Second) of Conflicts of Laws § 188 Comment b, subsection 1 (1971). Indeed, relying on justified expectations is the primary reason why parties enter into formal agreements. The significance of the parties' expectation in choice of law analysis varies depending upon the nature of the conflict at issue. In situations where the application of one state's law would invalidate a contract and application of another's would uphold it, the parties' expectations play an important role in the choice of law determination. Restatement (Second) of Conflicts of Laws § 188 Comment b, subsection 1 (1971). The parties with forethought and sophistication entered into the policies in question. The uncontested facts reveal that the negotiations and contacts surrounding the creation of these policies were primarily in New Jersey. Such numerous and pervasive contact is strong evidence that the parties must have contemplated the application of New Jersey law to the policies at issue. This must be so because the carriers' inspections of Josephson's waste products took place in New Jersey, before it was known where the waste would ultimately come to rest. Only the uniform application of New Jersey law can afford a consistent predictable result. Thus, *244 New Jersey law should apply to protect these justified expectations.

4. The Basic Policies Underlying The Particular Field of Law.

The basic policy of all environmental law is to protect the health and safety of people and their surrounding environment. Applying New Jersey's law to Pennsylvania and New York hazardous waste sites does not offend this policy because New Jersey's expansive interpretation of the pollution exclusion clause more readily advances the remediation of environmental hazards. It protects New Jerseyians when they are in New Jersey, New Yorkers and Pennsylvanians when they, too, are in New Jersey and, to a lesser extent, New Jerseyians when they are in New York or Pennsylvania.

5. Needs of The Interstate and International System.

New Jersey, New York, and Pennsylvania are all concerned with the health and safety of their citizens and the protection of their environments. While New Jersey's interpretation of the pollution exclusion clause differs from Pennsylvania's and New York's, this difference, though important to the litigants, is less significant to Pennsylvania and New York. Applying New Jersey law to the Pennsylvania or New York sites does not increase the risk of further contamination to the Pennsylvania or New York environments, it decreases it. New Jersey's particular interpretation of the pollution exclusion clause would not compel New York or Pennsylvania, as was the fear articulated in Leksi, to "close all of its landfills rather than face the result of paying to clean-up hazardous waste deposited on its land by a foreign corporation." 736 F. Supp. at 1334. Accordingly, the court finds that the application of New Jersey law does not unduly impair interstate systems.

*245 6. Ease In Determination.

The ease of determination is the least important factor in the choice of law analysis and is truly implicated only when a rule or standard proves unworkable. While the substantial interest test lacks the parsimony of either the traditional lex loci contractus rule or the simplicity of Leksi's location of the waste rule, it is a workable and prudent standard that encourages rational, dynamic, and flexible, rather than mechanical, choice of law determinations.

V. CONCLUSION
The result of this decision extends New Jersey's substantial interest test for choice of law questions where highly significant public policies affecting health, safety, and welfare are concerned. Hereafter, where New Jersey has (a) a[3] substantial interest in the outcome of the litigation, and (b) a[3] substantial contact with at least one of the principal litigants, and (c) a strong public policy[4] affecting health, safety, and welfare at odds with that of at least one competing state, our courts should apply New Jersey law.
*246 This court concludes that New Jersey meets all three prongs of the extended substantial interest test articulated above and therefore applies New Jersey law to the interpretation of the pollution exclusion clause contained in the various insurance policies between Josephson and the defendant carriers regarding coverage of the two sites located in New York and Pennsylvania.
Not too long ago, New Jersey lost a long and bitter fight to keep out-of-state waste out of New Jersey, Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). There, after characterizing the movement of garbage as "commerce" and New Jersey waste dumps as "natural resources," the United States Supreme Court held that New Jersey could not attempt to isolate itself from a problem  the disposal of solid waste  common to her sister states. Now it follows that her sister states cannot be used as shields to shelter New Jersey polluters or their carriers from the sword of environmental purity, to the prudent and swift use of which the public policy of New Jersey is inexorably committed.
NOTES
[1] Additionally, the plaintiff seeks a legal interpretation of the "sudden and accidental" language contained in the various policies. This court declines to render an interpretation, concluding that to do so in the incipient stages of the case without evidence of the specific nature of the contamination would be an advisory opinion not within the jurisdiction of this court. See N.J. CONST. art. VI, § 3, ¶ 3; Walker v. Stanhope, 23 N.J. 657, 130 A.2d 372 (1957); Rybeck v. Rybeck, 150 N.J. Super. 151, 375 A.2d 269 (App.Div. 1977).
[2] Pennsylvania has enacted statutes designed to protect the environment. See, e.g. Pennsylvania's Solid Waste Management Act, 35 Pa. Cons. Stat., Sec. 6018.101 et seq. (1988). The people of Pennsylvania have stated through their legislators:

The citizens of this Commonwealth have a right to clean water and a healthy environment, and [the] general assembly has a responsibility to ensure the protection of that right.
Similarly, New York has enacted laws intended to prevent environmental contamination. New York has expressed this concern in N.Y.Envir.Conser.Law, Sec. 1-0101, (Consol. 1982), which in relevant part states:
The quality of our environment is fundamental to our concern for the quality of life. It is hereby declared to be the policy of the State of New York to conserve, improve and protect its natural resources and environment and control water, land and air pollution, in order to enhance the health, safety and welfare of the people of the state and their overall economic and social well being.
[3] This is not meant to suggest that New Jersey must have the most substantial interest of each of the competing states, but rather that New Jersey need only have any interest in the outcome of the litigation and any contact with at least one of the litigants, which under prevailing case law, may be characterized as substantial. In this case, Pennsylvania and New York obviously each have a substantial interest in the clean-up of the sites located in their respective states; but that does not diminish New Jersey's substantial interest in the outcome of the litigation, nor can it impair New Jersey's substantial contact with the litigants.

As anyone who has lived in New Jersey in the last two decades of the twentieth century knows, in recent times New Jersey has become the most environmentally sensitive State in the Union.
[4] It is also clear that a public policy consideration alone, even if a highly significant one, is generally insufficient to resolve a choice of law question, Cf. State of New Jersey v. Signo Trading Intern., Inc., 130 N.J. 51, 66, 612 A.2d 932 (1992); but that is hardly the case here.