NL INDUSTRIES, INC., Plaintiff,

v.

COMMERCIAL UNION INS. COS., Defendant.

COMMERCIAL UNION INS. COS., Third–Party Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, et al., Third–Party Defendants.

NL INDUSTRIES, INC., Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, et al., Third–Party Defendants.

Civ. No. 90–2125 (WHW).

United States District Court, D. New Jersey.

Aug. 13, 1996.

Andrew T. Berry, Kevin J. Connell, McCarter & English, Newark, NJ, for Plaintiff NL Industries, Inc.

William B. McGuire, Tompkins, McGuire & Wachenfeld, Newark, NJ, for Third–Party Defendant Certain Underwriters at Lloyd's.

Mitchell S. Cohen, Mound, Cotton & Wollan, New York City, for Defendant International Insurance Co.

Edward G. D'Alessandro, Jr., D'Alessandro & Jacovino, Florham Park, NJ, for Defendant International Surplus Lines Insurance Co.

**OPINION**

WALLS, District Judge.

In a previous opinion and order, 926 F.Supp. 1213 (D.N.J.1996), the Court granted all the parties' motions for partial summary judgment on choice of law in part. With regard to the issue of how to interpret the standard pollution-exclusion clause in certain comprehensive general liability ("CGL") contracts (the " 'sudden' issue"), it determined that Illinois law applies to a waste site in Granite City, Illinois (the "Granite City site") and New Jersey law applies to a waste site in

Portland, Oregon (the "Portland site"). Moreover, with regard to the issue involving timeliness of notice of an occurrence or notice of a claim or suit involving the two sites (the "late-notice issue"), it ruled that New Jersey law applies to the Granite City site and Oregon law applies to the Portland site.

Of the seven insurers who made motions for partial summary judgment, three—Certain Underwriters at Lloyd's and other British Companies ("Lloyd's"), International Insurance Co. ("IIC"), and International Surplus Lines Insurance Co. ("ISLIC")— now move for reconsideration.

I. *Standard of review for a motion for reconsideration*

Rule 59(e) provides that "[a] motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Local Rule 12(I) states that

> [a] motion for reargument shall be served and filed within 10 days after the entry of the order or judgment.... There shall be served with the notice a brief setting forth concisely the matters or controlling decisions which counsel believes the Judge ... has overlooked.

U.S.D.C.N.J.Gen.R. 12(I).

A Rule 59(e)/12(I) motion must rely on one of three major grounds: 1) an intervening change of controlling law; 2) the availability of new evidence not available previously; or 3) the need to correct clear error of law or prevent manifest injustice. *North River Ins. Co. v. CIGNA Reins. Co.,* 52 F.3d 1194, 1218 (3d Cir.1995) (citations omitted). Here, Lloyd's, IIC, and ISLIC implicitly invoke only the third ground.

A party should not use a motion for reconsideration to reargue the motion or present evidence which should have been raised before. Moreover, "[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.' " *G–69 v. Degnan,* 748 F.Supp. 274, 275 (D.N.J.1990) (*quoting Carteret Savings Bank, F.A. v. Shushan,* 721

F.Supp. 705, 709 (D.N.J.1989), *appeal dismissed,* 919 F.2d 225 (3d Cir.1992)). When a motion for reconsideration raises only a party's disagreement with a decision of the Court, that dispute "should be dealt with in the normal appellate process, not on a motion for reargument under" Rule 12(I). *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.,* 680 F.Supp. 159, 163 (D.N.J.1988).

## II. *Analysis*

In *Gilbert Spruance Co. v. Pennsylvania Manufacturers' Ass. Ins. Co.,* 134 N.J. 96, 629 A.2d 885 (1993), the New Jersey Supreme Court noted that

> we conclude that in determining the choice-of-law rule to govern casualty-insurance contracts, such as the CGL policies in this case, we look first to ... section 193. As stated previously, that section provides that the law of the state that "the parties understood was to be the principal location of the insured risk ... [governs unless] some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties...." However, in certain cases when the "subject matter of the insurance is an operation or activity" and when "that operation or activity is predictably multistate, the significance of the principal location of the insured risk diminishes...." In such situations, the governing law is that of the state with the dominant significant relationship according to the principles set forth in ... section 6.

*Id.* at 111, 629 A.2d 885 (citations omitted).

In its previous opinion, this Court—following *Gilbert Spruance*—first applied § 193 of the Restatement and then § 6. After a § 193 analysis, the Court determined that the parties understood that, during the term of the contracts, the principal location of the insured risk at the Granite City site was in Illinois and that the principal location of the insured risk at the Portland site was in Oregon. See 926 F.Supp. at 1223–25. Therefore, the Court ruled that Illinois law should apply to the Granite City site and Oregon law to the Portland site, unless, with regard to the particular issues at stake in this litigation, some other state has a more significant relationship under the § 6 principles to the transactions and parties.

There are seven factors the Court must apply in a § 6 analysis. For convenience, the Court followed the lead of the Third Circuit and reduced the factors to five "interest groups." *See General Ceramics, Inc. v. Firemen's Fund Ins. Cos.,* 66 F.3d 647, 656 (3d Cir.1995). These include:

(1) the purposes and policies behind each of the competing rules of law and the interests of each respective state in having its particular rules govern,

(2) where interstate or foreign commerce is involved, the desirability of promoting mutually harmonious relationships between governmental entities,

(3) the protection of justified expectations of the parties and the parties' needs for predictability of result,

(4) the basic policy underlying the particular field of law involved, and

(5) the concerns of judicial administration, such as which of the competing rules will simplify the determination and application of the applicable law.

*Id.* In applying these categories, the Court noted, it must consider them in light of *each* particular issue and competing rule. *See, e.g., NL Industries, Inc. v. Commercial Union Ins. Co.,* 65 F.3d 314, 322 n. 6 (3d Cir. 1995). Moreover, the Court pointed out that it should stress the first category and deemphasize the last. *See General Ceramics,* 66 F.3d at 656.

The Court conducted an extensive analysis of the five interest groups. In the first, second, and fourth categories, the Court found that 1) with regard to the "sudden" issue, Illinois had the most significant interest at the Granite City site and New Jersey had the most dominant one at the Portland site and 2) with regard to the late-notice issue, New Jersey had the most significant interest at the Granite City site and Oregon had the most dominant one at the Portland site. With regard to the third category, the Court found that "the scanty evidence available suggests that the parties justifiably expected Illinois law to apply to the Illinois site and Oregon law to the Oregon site." 926

F.Supp. at 1231. In the fifth category, the Court determined that while the rule employed in deciding this motion was somewhat complex, such complexity was necessary and inevitable. Finally, after weighing its findings, the Court concluded that 1) with regard to the "sudden" issue, Illinois law should apply to the Granite City site and New Jersey law apply to the Portland site, and 2) with regard to the late-notice issue, New Jersey law apply to the Granite City site and Oregon law apply to the Portland site.

Upon reconsideration, the Court believes that, with regard to both the "sudden" and late-notice issues, all five § 6 interest groups cut in favor of applying Illinois law to the Granite City site and Oregon law to the Portland site. Thus, both § 193 and § 6 require the Court to apply Illinois law to the two issues at the Granite City site and Oregon law to the issues at the Portland site.

### A. Interests of the relevant states

Four states have an asserted interest here: New Jersey, New York, Illinois, and Oregon. Under the applicable reasoning of *Johnson Matthey Inc. v. Pennsylvania Manufacturers' Association Insurance Company*, 250 N.J.Super. 51, 593 A.2d 367 (App.Div.1991), *Leksi, Inc. v. Federal Insurance Co.*, 736 F.Supp. 1331 (D.N.J.1990), and the Appellate Division decision in *Gilbert Spruance v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 254 N.J.Super. 43, 603 A.2d 61 (App.Div.1992)— all of which the New Jersey Supreme Court "substantially" followed—it is clear that Illinois has the dominant interest with regard to the Granite City site and Oregon with regard to the Portland site. The *Johnson Matthey* court, for instance, referred to New Jersey's "*paramount* interest in the remediation of toxic waste sites [in New Jersey], and in the fair compensation of victims of pollution." *Johnson Matthey*, 250 N.J.Super. at 57, 593 A.2d 367 (emphasis added). In addition, as discussed above, even though in that case Pennsylvania appeared to have a large num-

ber of contacts to the parties and to the insurance contracts, the court still found Pennsylvania's interests "relatively remote." *Id.*

In *Leksi*, the court found that New Jersey had a "compelling interest" in the remediation of New Jersey waste sites and that "it is difficult to imagine any interest that New Jersey could have that would be more compelling or, in the language of [*State Farm Mutual Automobile Insurance Co. v. Estate of Simmons*, 84 N.J. 28, 417 A.2d 488 (1980)], more 'dominant and significant,' than its interest in determining the availability of funds for the cleanup of hazardous substances located within its boundaries." *Leksi*, 736 F.Supp. at 1335. In making this determination, the court cited several New Jersey statutes dealing with cleanup of toxic wastes, and emphasized the state's "statutory policy" in this regard. *Id.* The court also referred to an *en banc* Eighth Circuit opinion stating that "the broad issue of the availability of liability insurance coverage under standard-form CGL policies for the costs of cleaning up hazardous waste sites is a question of substantial importance not only to liability insurers and their insureds, but to the public as well." *Id.* (citing *Continental Ins. Cos. v. Northeastern Pharm. & Chem. Co.*, 842 F.2d 977, 985 (8th Cir.) (*en banc*), cert. denied sub. nom., *Missouri v. Continental Ins. Cos.*, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988)).

In this case, NL has even fewer contacts to New York than did the *Johnson Matthey* insured to Pennsylvania. In *Johnson Matthey*, the parties and almost all of the relevant transactions were tied to Pennsylvania; the only real connection with New Jersey was the circumstance that the waste had been deposited there. In addition, it is difficult to see how New Jersey could have a "paramount interest" in waste sites in New Jersey but Illinois or Oregon could not have such an interest over waste sites in those respective states.[1] Indeed, in a similar case

---

**1.** Although the Court is skeptical that the Illinois and Oregon legislatures are any less interested in cleaning up wastes in their respective states than the New Jersey legislature (or, for that matter, protecting the health, safety, or welfare of their respective peoples from such wastes), it will briefly note in passing that both Illinois and Oregon—like New Jersey—have passed numerous statutes regulating pollution. See, e.g., the Pollution Abatement Enforcement Act, Ill.Ann.St.

in Illinois, the court found that Illinois had the strongest interest in determining insurance coverage because the site of cleanup, the plant that allegedly generated the waste, and the regulatory agency instrumental in investigating the site were all located in Illinois. *See Verlan, Ltd. v. John L. Armitage & Co.*, 1989 WL 8590 (N.D.Ill.1989). However, in a recent case, the Third Circuit showed how a state such as Illinois or Oregon might not have the most significant interest in having its law apply to determine coverage of waste sites within its borders. This decision, *General Ceramics*, is of course controlling authority.

In *General Ceramics*, waste generated in New Jersey was disposed of in Pennsylvania (conversely, *Gilbert Spruance* dealt with waste generated in Pennsylvania that was disposed of in New Jersey), and the conflict-of-law issue involved how to interpret the standard "sudden and accidental" pollution-exclusion language. New Jersey, on regulatory estoppel and public policy grounds, interprets "sudden" as lacking any temporal element, while Pennsylvania considers "sudden" to mean abrupt. The Third Circuit applied New Jersey law, and concluded that New Jersey's interest in *Gilbert Spruance* was "in securing financial resources both to remediate New Jersey toxic-waste sites and to compensate victims of New Jersey pollution." *General Ceramics*, 66 F.3d at 657. In contrast, it pointed out that New Jersey's interest in *General Ceramics* was in protecting New Jersey insureds and New Jersey insurance contract negotiation as well as promoting honesty before the state's regulatory agencies. Pennsylvania's interest was different. By adopting a rule giving literal meaning to "sudden," the court stated, Pennsylvania intended "to protect the contracting parties by giving them the freedom to bargain for and agree on the allocation of risk in the manner they think is best." *Id.* That

the waste "ultimately ended up in Pennsylvania" was no matter because "Pennsylvania's policy of giving effect to the plain meaning of an unambiguous contract shows that it is not concerned with how the risk will be allocated, leaving that decision to the contracting parties." *Id.* at 657–58 (footnote omitted). Because none of the contracting parties was a Pennsylvania domiciliary, the court determined that only New Jersey's interest was implicated.

In this case, the Court has determined that the principal location of the insured risk is in the state in which that risk is located—respectively, Illinois and Oregon. Under § 193, this is "the most important contact to be considered in the choice of applicable law...." Restatement, § 193, comment b, at 612. In contrast, the *General Ceramics* court found that the waste in question was "to some degree transient," and thus the location of the risk was "less significan[t]." *Id.* at 655; Restatement, § 193, comment b, at 611. Given this, in determining the various states' interests, the Court must give much more weight to the states in which the sites are located than did the court in *General Ceramics*. As the Third Circuit noted in *NL Industries*, "*Gilbert Spruance* ... establishes that in environmental cases, the location of the site carries *very substantial weight* in the 'significant relationship' analysis...." *NL Industries*, 65 F.3d at 321 (emphasis added). Or as Justice O'Hern has stated, "*Gilbert Spruance* ... emphasiz[es] that coverage issues are generally to be resolved on the basis of the location of the insured risk." *Waste Mgt., Inc. v. Admiral Ins. Co.*, 138 N.J. 106, 133, 649 A.2d 379 (1994) (O'Hern, J., concurring).

This case is more complex than *General Ceramics* because it involves more conflict-of-law issues, more states in which the sites are located, and more potentially applicable

---

Ch. 15, § 215/0.01 *et seq.;* the Hazardous and Solid Waste Recycling and Treatment Act, Ill. Ann.St.Ch. 30 § 750/3–1 *et seq.;* the Solid Waste Disposal District Act, Ill.Ann.St.Ch. 70 § 3105/1 *et seq.;* Local Solid Waste Disposal Act, Ill.Ann. St.Ch. 415, § 10/1 *et seq.;* Illinois Solid Waste Management Act, Ill.Ann.St.Ch. 415, § 20/1 *et seq.;* Toxic Pollution Prevention Act, Ill.Ann.St. Ch. 415, § 85/1 *et seq.;* Or.St.Ann. § 459.005 *et*

*seq.* (solid waste management); Or.St.Ann. § 465.003 *et seq.* (reduction of use of toxic substances and hazardous waste generation); Or.St. Ann. § 466.005 *et seq.* (storage, treatment and disposal of hazardous waste and PCB); Or.St. Ann. § 468.076 *et seq.* (Uniform Transboundary Pollution Reciprocal Access Act); Or.St.Ann. § 468B.005 *et seq.* (water pollution control).

state laws. In *General Ceramics,* the Court needed to decide whether to apply New Jersey or Pennsylvania law with regard to the "sudden" issue at sites in Pennsylvania—that is, it faced two options. In this lawsuit, the Court faces 12 options: two conflict-of-law issues (interpretation of "sudden" and late notice), two states with sites (Illinois and Oregon), and three states with a possible interest in seeing their law applied with regard to any one site (New Jersey, New York, and Illinois or Oregon).[2]

██ The Court will deal with each state's interests with regard to the "sudden" issue and the Granite City site. First, because the waste at this site is not "transient," in the sense of being foreseeably transported between states, that the waste is located in Illinois must have weight. *See NL Industries,* 65 F.3d at 321 n. 5, 323 (noting that "the *Gilbert Spruance* court incorporated the interests of the waste site into the customary § 6 analysis" and that the court adopted a "site-specific analysis"). In addition, the waste at Granite City was both generated and disposed in Illinois, Illinois has a strong statutory policy of regulating toxic wastes, and three of the insurers are Illinois citizens. In comparison, New York has an interest in protecting NL, a citizen of New York at the time the contracts were entered into as well as the one insurer which is a citizen of that state. It also has an interest as the place where contracts were negotiated and executed. New Jersey only has an interest in protecting the insured—a citizen of New Jersey.

██ Arguably, New Jersey also has an interest in applying the regulatory estoppel or public policy rationale in *Morton International, Inc. v. General Accident Insurance Co. of America,* 134 N.J. 1, 629 A.2d 831 (1993), to the Granite City and Portland sites. However, the Court is not persuaded. While it is true that the *General Ceramics* court ruled that the *Morton* rationale applied to waste sites in Pennsylvania, this does not matter. First, the waste involved in that case had been generated in neighboring New

Jersey, and was "transient." In this matter, the wastes were both generated and deposited in states far from New Jersey, and, as the Court previously found, they cannot be viewed as mobile. Second, in *General Ceramics,* the court specifically found that "New Jersey has significant contacts with the insurance contract." *General Ceramics,* 66 F.3d at 649. Here, the insurance contracts were neither negotiated nor executed in New Jersey. Third, the court determined that the policy reason behind the *Morton* rationale was "concern for insureds who purchase coverage based on the state's regulatory approval of the standard CGL policies." *Id.* at 657. The court identified the "underlying policies prompting this interpretation [as the] protection of the New Jersey insured (and of New Jersey insurance contract negotiation) and promotion of honesty before the state's regulatory agencies." *Id.* It then concluded that "[t]hese interests are implicated here because the insured is a New Jersey corporation with its main plant and headquarters in New Jersey and the relevant insurance policy was negotiated and paid for in New Jersey." *Id.* Conversely, in this case, the only link the insurance contracts have with New Jersey is that NL happens to be a New Jersey corporation (one whose headquarters were formerly in New York and are now in Texas). Given this sole contact, the Court cannot say that the New Jersey policy interest behind the *Morton* rationale is implicated. *See J. Josephson, Inc. v. Crum & Forster Ins. Co.,* 293 N.J.Super. 170, 679 A.2d 1206, 1215 (App.Div.1996) (noting that in *General Ceramics,* the Third Circuit concluded that "New Jersey's policy purposes were better served by the application of New Jersey law where its interests and contacts dominated"). In short, the Court determines that New Jersey's interest in allocating the risk on the "sudden" issue under insurance contracts covering sites in other states is only engaged if it has sufficient contacts with those contracts. Here, New Jersey lacks such contacts. Therefore, the

---

**2.** No party has suggested applying Oregon law to the Granite City site or Illinois law to the Portland site.

Court does not believe that the *Morton* rationale is relevant to the present § 6 analysis.

It is also worth noting that the New Jersey interest found in *Gilbert Spruance* is not present here. As the court recognized in *General Ceramics,*

> [b]ecause *Gilbert Spruance* involved an out-of-state insured, an out-of-state policy, and out-of-state waste generation that resulted in in-state environmental damage, the two interests justifying the result in *Morton* ... were not implicated. Instead, the state interest implicated in *Gilbert Spruance* was New Jersey's interest in securing financial resources both to remediate New Jersey toxic-waste sites and to compensate victims of New Jersey pollution.

*General Ceramics,* 66 F.3d at 657. In this case, the relevant environmental damage is not in New Jersey, but in Illinois and Oregon. New Jersey has but a tangential interest in .ensuring the availability of additional resources to clean up waste sites in those states or to compensate victims of pollution there. Certainly, Illinois and Oregon's interests in this regard are much stronger.

Weighing the interests of the three states, then, it is clear that Illinois has the most forceful reasons for having its law apply to the "sudden" issue at the Granite City site. Certainly, neither New Jersey nor New York's interests come close to rebutting the presumption for Illinois law under § 193.

■ With regard to the late-notice issue at the Granite City site, the analysis is much the same. The only factor tying New Jersey to the Granite City site is NL's incorporation in New Jersey. Hence, New Jersey's interest in allocating the risk on this issue under the contracts is not triggered, and, other than protecting its insured, it would have no reason to want its "likelihood of appreciable prejudice" standard apply to the Granite City site. New York's contacts with the insurance contracts remain as above. Thus, it is clear that Illinois law should apply to this issue as well.

■ Turning to the "sudden" and late-notice issues at the Portland site, Oregon has an interest in the fact that the waste is located there as well as a strong statutory policy of regulating toxic wastes. New York and New Jersey have the same interests described above in connection with the Granite City site. Here, the Court concludes that Oregon has the most powerful grounds to see its law apply to both issues at the Portland site.

In sum, then, the Court finds as follows: 1) with regard to the "sudden" issue, Illinois law should apply to the Granite City site and Oregon law apply to the Portland site, and 2) with regard to the late-notice issue, Illinois law should apply to the Granite City site and Oregon law apply to the Portland site.

### B. *Interests of commerce*

The next factor, assuming interstate or foreign commerce is involved, is furthering harmonious relations between the states. Any interest here, though, is small because there is no evidence that wastes were transported across state lines either to or from Illinois or Oregon. In contrast, cases such as *Gilbert Spruance, General Ceramics, Leksi,* and *J. Josephson, Inc. v. Crum & Forster Ins. Co.,* 265 N.J.Super. 230, 626 A.2d 81 (1993), *rev'd in part on other grounds,* 293 N.J.Super. 170, 679 A.2d 1206 (App.Div.1996) all involved such interstate transportation. However, since there is doubtless some impact on interstate commerce here, the Court will briefly examine this factor.

The *General Ceramics* court notes that if the choice of a particular state's law disrupts another state's regulatory efforts, this could have an adverse effect on interstate commerce. Along these lines, comment d of § 6 suggests that, in formulating a choice-of-law rule, a court should look to see what needs and policies other states have adopted or would be likely to adopt. This suggests that, at least in this case, the result of the analysis under this factor would be identical to that under the state-interest one. Illinois would have the greater interest over New York and New Jersey on the "sudden" and late-notice issues regarding the Granite City site and Oregon would have a more significant interest on the "sudden" and late-notice issues regarding the Portland site.

## C. *Interests of the parties*

The next factors are the protection of the parties' justified expectations and their need for certainty, predictability, and uniformity of result. Here, the Court needs to examine whether the parties have justifiably molded their conduct to conform to the law of another state. Also, the Court should emphasize the need for predictability where the parties thought in advance about the legal consequences of their transactions and for uniformity where "the transfer of an aggregate of moveables, situated in two or more states, is involved." Restatement, § 6, comment i, at 16.

In its previous opinion, the Court found that the scanty evidence available suggests, if anything, that the parties justifiably expected Illinois law to apply to the Illinois site and Oregon law to the Oregon site. Moreover, such a result, while possibly complex, would also be certain, predictable, and, within each state at least, uniform.

The Court does not see any need to revisit this analysis, and reaffirms it.

## D. *Interests underlying the area of law*

This factor is not particularly important unless the policies of the interested states are significantly different. Restatement, § 6, comment h, at 15. Here, the areas of law would be insurance and environmental law. *Cf. NL Industries, Inc.,* 65 F.3d at 321 (noting that a "different analysis" governs environmental insurance contract controversies and product liability insurance contract disputes, and that, with regard to the latter, the relevant areas of law for this factor are insurance and tort law).

"Insurance law policy deals primarily with the proper standards and procedures for the fair interpretation of the insurance contract, accounting for the interests of the insurer, the insured, and the public." *NL Industries,* 65 F.3d at 328. The Court believes that the insurance contracts at issue here can be most fairly interpreted by applying Illinois law to the Granite City site and Oregon law to the Portland site. Doing so also best protects the legitimate expectations of the insurers

and NL at the time they entered into the contracts as well as the public interest.

Next, the Court must look to Illinois and Oregon's strong statutory policies on remediating wastes within their borders. These policies obviously have an impact on how the parties' allocated risk for the environmental claims at issue. Because New Jersey's interest in remediating wastes in Illinois and Oregon is more limited than those states' interests in doing so, Illinois and Oregon's interests here are obviously weightier. *See J. Josephson,* 265 N.J.Super. at 244, 626 A.2d 81. In addition, the parties could or should have known of Illinois and Oregon's "overriding interest" in their respective environments, "and the reality that in environmental torts of this nature, liability runs with the land." *Leksi,* 736 F.Supp. at 1336.

Thus, with regard to both the "sudden" and late-notice issues, Illinois' interest as to the Granite City site must be greater than that of New Jersey and New York's. Similarly, Oregon's interest as to the Portland site must also be stronger.

## E. *Interests of judicial administration*

The Restatement notes that while "[i]deally, choice-of-law rules should be simple and easy to apply[, t]his policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results." Restatement, § 6, comment j, at 16. The rule employed in deciding this motion is not especially difficult to apply. Moreover, it is required by the case law. In fact, as the New Jersey Supreme Court suggested in *Gilbert Spruance,* "short of congressional intervention or a limited overruling of the *Erie* doctrine to permit the development of a federal common law of contracts intended to be nationwide in scope," some complexity in this area is necessary and inevitable; the goal of uniformity of insurance contract interpretation in the environmental area is an "illusion." *Gilbert Spruance,* 134 N.J. at 114, 629 A.2d 885 (*quoting Travelers Indem. Co. v. Allied–Signal, Inc.,* 718 F.Supp. 1252, 1258 (D.Md. 1989)).

### III. *Conclusion*

Applying § 193 of the Restatement in its original opinion, the Court determined Illinois law should apply to the Granite City site and Oregon law to the Portland site, unless, with regard to the particular issues at stake in this litigation, some other state has a more significant relationship under the § 6 principles to the transactions and parties. Now, upon reconsideration, the Court has engaged in a different § 6 analysis. Under this new analysis, the Court determines that all five of the categories under this section suggest that, with regard to both the "sudden" and late-notice issues, Illinois law should apply to the Granite City site and Oregon law to the Portland site.

Therefore, the Court grants the motions for reconsideration. With regard to the issue of how to interpret the pollution-exclusion clause in the CGL contracts, it determines that Illinois law applies to the Granite City site and Oregon law applies to the Portland site. Moreover, with regard to the late-notice issue at the two sites, it rules that Illinois law applies to the Granite City site and Oregon law applies to the Portland site.

**SO ORDERED.**

### ORDER

The Court has reviewed the documents filed in this case and heard oral argument from the parties. For the reasons discussed in the accompanying opinion, the Court rules as follows:

The Court **grants** the motions for reconsideration of Certain Underwriters at Lloyd's and other British Companies ("Lloyd's"), International Insurance Co. ("IIC"), and International Surplus Lines Insurance Co. ("ISLIC").

With regard to the issue of how to interpret the pollution-exclusion clause in the comprehensive general liability insurance policies, it determines that Illinois law applies to the site in Granite City, Illinois (the "Granite City site") and Oregon law applies to the site in Portland, Oregon (the "Portland site"). Moreover, with regard to the issue involving timeliness of notice of an occurrence or notice of a claim or suit involving

the two sites, it rules that Illinois law applies to the Granite City site and Oregon law applies to the Portland site.

**SO ORDERED.**